STATE OF MISSOURI, Respondent, *v.* MATTHEW LEWIS, Appellant.

### November 3, 1880.

1. Parties are, in the absence of fraud or treachery on the part of their attorney, bound by his acts or omissions.

2. Where there has been an abuse of the discretion of the trial court in refusing to grant a continuance in a criminal case, the judgment will be reversed.

APPEAL from the St. Louis Criminal Court, LAUGHLIN, J. *Reversed.*

A. N. MERRICK, for the appellant, cited: *The State* v. *Wood*, 68 Mo. 444; *The State* v. *Maguire*, 69 Mo. 203.; *The State* v. *Walker*, 69 Mo. 274.

J. C. NORMILE, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

The defendant was indicted for murder in the first degree. After two continuances by consent of the parties and one upon the court's own motion, the case was called for trial on the eighteenth day of November, 1879. The defendant made an application for continuance, supported by an affidavit of his attorney, which on the following morning was overruled. A supplemental application for continuance was then made, supported by the defendant's affidavit. This also was overruled, whereupon the defendant's attorney withdrew wholly from the cause. The court then appointed Messrs. Babcock and Turner, two respectable attorneys, one of whom was not present in court at the time, to conduct the defence, and adjourned the trial until the twenty-fourth day of the same month. On the last-mentioned day the defendant presented another application for continuance, backed by his own affidavit, which, among other matters, set forth the following facts, viz. : That in April, 1879, an attorney undertook the charge and management of defendant's cause, and continued in sole charge thereof until November 19, 1879 ; that in June, 1879, said attorney applied to defendant for money to be used in taking depositions of witnesses, to be used in defendant's behalf, and from subsequent conversations and occurrences, which are set forth in the affidavit, defendant had cause to believe, and did believe, that such depositions would be duly taken to be used on the trial ; that it had just come to the knowledge of defendant that such depositions were not in fact taken ; that defendant had furnished to his said attorney at four different times prior to November, 1879, the names of witnesses mentioned, twenty-one in number, to be subpœnaed in his behalf, but none of them were ever summoned ; that defendant had confided fully in his said attorney, and had believed that said attorney had done or would do all things necessary and proper to be done in and about the case for a legal and proper defence ; that since the appointment of

his later attorneys, defendant had had frequent and lengthy interviews with them, but that there were many matters of great importance, and necessary to a careful and proper presentation of his case, which he had had no time or opportunity, as yet, to communicate to them; that he had furnished his said attorneys with a full and complete list of his witnesses, and that subpœnas for them were placed in the hands of the sheriff on the morning of the 21st instant; that since the appointment of his said attorneys they had given all the time and attention it was possible to give to his case, but they had been unable, with their utmost exertions, to make such preparations as were demanded for a fair trial, and on that account they could not safely go to trial; that defendant had been kept in close confinement ever since the eighteenth day of September, 1877, and that he had no friends or other persons upon whom he might call for advice or assistance, excepting his said attorneys. The affidavit set forth also the formal matters usually required, showing the materiality of the witnesses, with the facts which they were expected to prove, their absence, and that they were absent without the consent, connivance, or procurement of the affiant, and that, if a continuance should be granted, their testimony would be procured in time for a trial at the next succeeding term. It was alleged that the witnesses reside at Washington, Missouri, and that all of them would testify to the fact that at the time of the homicide in St. Louis charged against defendant, and for several days before and after it, he was in Washington, and could not possibly have perpetrated the crime.

The application was overruled, the trial proceeded without any testimony offered on behalf of the defendant, and he was found guilty of murder in the first degree.

An application for a continuance is addressed to the discretion of the trial court, whose action thereupon will not be disturbed, on appeal, unless it clearly appears that the discretion has been abused to the predjuice of the applicant.

For the purposes of the application the affidavit supporting it must be taken to be true, except where it is manifestly contradictory or false upon its face, or conflicts with some matter within the judicial knowledge of the court. As a general rule, parties are held to a strict responsibility for the acts or omissions of their attorneys. To this technical rule there must be some exceptions in extreme cases. Even in civil proceedings, a fraudulent collusion between an attorney and the adverse interest will exempt his client from the natural consequences of such a betrayal of his rights. When a human life is at stake, every instinct of humanity, every sentiment of justice, demands that the particular facts of the case be more narrowly looked into, so that mere weakness, ignorance, or helplessness may not be visited with the inflictions designed by a general rule to punish negligence, trifling, or scheming for a delay of justice. Men must not be murdered by technicalities. It is possible, in the present case, that the acts and omissions of the defendant's attorney resulted from nothing more than a mere negligence or inattention, such as the client should be bound to, with all its consequences, in an attorney of his own selection. But there is at the same time in the facts detailed such a flavor of deliberate and presistent refusal to make any preparation whatever for defence at the trial, with such a strange desertion of the defendant, — leaving him to his fate in the face of impending disaster, — that it is by no means difficult to imagine rather the presence of wilful and deliberate treachery. An attorney is an officer of the court, selected and appointed as such for qualifications which imply at least a certain guaranty that he will be honest and faithful to those who may intrust him with their causes. To this guaranty, whatever may be its real limits or extent, the law and the courts are necessary parties. They should hestitate to protect a litigant against a violation of its terms, which they themselves have made possible by the admission of the attorney. It must not be objected that this doctrine affords

a protection against negligence or general inefficiency, to the detriment of a client. Enough has been said to show that 'no guaranty against these can be inferred in any case. As to what were the real springs of action in the present case, we think the defendant should be allowed the benefit of the doubt, and that he should not be held accountable for the derelictions of his attorney up to the overruling of his first and supplemental applications, on the 19th of November.

This brings us to the inquiry whether sufficient time was given by the court to the defendant to prepare for his trial on the 24th. A Sunday intervened. There were, then, but three working-days after the appointment of the new attorneys and before the morning of the day of trial. This seems terribly short, in view of what the defendant had at stake, and in view, also, of the customary length of time given for such momentous preparations. It is argued for the State that, notwithstanding the attorney's failure, the defendant himself could easily have obtained subpoenas from the clerk and placed them in the hands of the officer before the case was first called for trial. But the affidavit declares that the defendant had entire confidence in his attorney, and honestly believed that everything necessary for a fair trial had already been done by him. It shows, moreover, that the defendant was confined in prison, and had no friends upon whom he could call for advice or assistance. It is hardly to be presumed that he, an ignorant colored person, was familiar with the practice of the courts. If there is any force in what is said above, it would be unconscionable to apply to the motion for a continuance on the 24th objections which arose before the 19th, and for which the defendant was not morally responsible. The only inquiry should be, whether a reasonable time was allowed between the 19th and the 24th for procuring the defendant's witnesses from a distant county. The affidavit states that the defendant's newly appointed

attorneys "have given all the time and attention it was possible to give, since their appointment as his attorneys aforesaid, but they have been unable, with their utmost exertion, to make such preparations as the case will admit of and demand." It does not seem to us that this statement can be considered at all unreasonable.

Upon all the facts presented in the record, we incline to the opinion that the ends of justice would have been more fairly reached in the granting of the defendant's last application for a continuance. The judgment is therefore reversed and the cause remanded. All the judges concur.