WILLIAM C. DAVIDSON, Respondent v. QUINCY, OMAHA & KANSAS CITY RAILROAD CO., Appellant.*

In the Kansas City Court of Appeals, April 7, 1924.

RAILROADS: Damages: Question of Railroad's Duty under Statute to Fence Right-of-way Near Station Held Question for Jury. In an action for double. damages under provisions of section 9948, Revised Statutes 1919, question of whether railroad company should have maintained fence through which plaintiff's bull entered its right-of-way near a station in an unincorporated village at which there was no agent, *held* for the jury.

---

*Headnote 1. Railroads, 33 Cyc., p. 1307.

Appeal from Circuit Court of Clay County.—*Hon. Ralph Hughes,* Judge.

AFFIRMED.

*Lawson & Hale* for respondent.

*J. S. Simrall* and *J. G. Trimble* for appellant.

ARNOLD, J.—This is an action for double damages under the provisions of section 9948, Revised Statutes 1919, arising out of the killing of a registered shorthorn bull belonging to plaintiff, by a freight train of defendant at a public crossing at Campbellton Station in Clay County, Mo., November 30, 1920. The facts in the case are not in dispute and the controversy is concerned with the law applicable to said facts.

About the year 1897, the predecessor of defendant constructed and maintained a fence on the east line of its right of way where the railroad passes through land belonging to plaintiff. But about the year 1912, this defendant notified plaintiff that said fence would no longer be maintained, and since that time no repairs thereto have been made. The railroad runs through plaintiff's land in a general north and south direction. An east and west public highway crosses the railroad immediately south of the platform which is known as Campbellton Station. The railroad company does not have an office, nor does it maintain an agent at Campbellton, which is not a town and none is platted. The said station consists of a platform, a shelter shed, a cattle pen and a passing track, all designed for the use of persons desiring to ship cattle or other farm products from that point, and for the receipt of freight, such as corn and hay for the farmers and feeders in that vicinity.

The south switch for the passing track is about twenty-five feet north of the public highway south of the platform. The point of switch at the north end of the

side track is 432.5 feet south of a point of intersection of the main track with the east line of a north and south highway, the railroad bearing to the east from a point north of Campbellton station. About 300 feet north of the east and west public highway is a stock pen, west of the side track which is, itself, west of the main track. The public passes to the west of these said tracks on the railroad right of way as far as the stock pens and could pass farther north should occasion demand. Two passenger trains daily are run over the main line, each way, and a regular freight train, known as a "half train" is run one way each day, and sometimes an extra freight train is operated over this track. Trains stop for passengers only on flag signal.

As stated above fences had been maintained until 1912 on the east and west sides of the right of way, wholly on the right of way land owned by the railroad company. Plaintiff owns the land on the east side of the right of way at this point. On November 30, 1920, plaintiff's bull went from plaintiff's pasture through said fence, which was in such condition that it would not turn ordinary stock, went on to defendant's right of way from the east side thereof at a point about 1300 feet north of the east and west highway above mentioned, and about 250 to 300 feet south of the switch at the north end of the side track. After passing through the fence, the bull went south on or along the track to the east and west highway. About 7:30 p. m. one of defendant's freight trains, southbound, which did not have occasion to stop at Campbellton, struck and killed the bill, throwing the body to a point south of the cattle guard located at the south line of the highway.

Suit was instituted in the circuit court of Clay county where it was tried to the court without the aid of a jury. Defendant asked the following declarations of law which the court refused:

"1.   Under the law and all the evidence in the case plaintiff is not entitled to recover and the verdict and finding of the court must be for the defendant.

"2.   Under all the evidence in the case the court finds that the defendant could not have maintained cattle guards across its main and side tracks at any point south of where plaintiff's animal came upon the track without endangering its employees and interfering with the operation of its trains.   Therefore defendant was under no obligation to maintain the fence at the point where said animal got upon the track and the verdict. must be for the defendant.

"3.   Under all the evidence in the case the court finds that the place where plaintiff's animal came upon the track was within the station limits of the station of Campbellton where defendant was not required by law to maintain a fence.   Therefore, the verdict must be for the defendant."

The agreed statement of facts placed the value of the animal at $150.   The finding of the court was for plaintiff and judgment was entered therefor in the sum of $300, under the provisions of the statute.   Motions for new trial and in arrest were filed and by the court overruled.   Defendant appeals.

The first assignment of error is directed against the refusal of the court to give the first declaration of law asked by defendant which is in the nature of a demurrer. In support of this assignment, it is urged (1) that the railroad company is not required by the law to fence its station grounds, nor maintain cattle guards so near its switches as to endanger the lives of its employees, or interfere with the handling of trains; (2) that the fencing statute, section 9948, Revised Statutes 1919, does not require fences where cattle guards are not required; (3) that it is the place where the animal got on the track and not the place where it was killed which fixes liability; and (4) that the company is not liable where animals enter upon railroad grounds within switch limits of a station and are killed.

Counsel agree that it is the rule that the place where the animal got on the track and not the place where it

was killed which fixes the liability. It is also agreed that the animal entered the right of way from the east side thereof, through the defective fence between the switches of the side track at Campbellton station, and north of the point where the stock pen is located on the west side of both the main line and the side track. There is no contention by either party that a cattleguard was required at any point between where the bull entered the right of way and the place where he was struck. There was a cattleguard at, or near, the south line of the east and west highway crossing, but it seems to have been ineffectual inasmuch as the impact of the train lifted the animal and threw the carcass through the air above said cattleguard and deposited it on the south side thereof.

The petition does not charge negligence for failure to maintain cattleguards. The only charge of negligence is failure to maintain a proper and effective fence along the right of way. The answer was a general denial.. The question of cattleguards, therefore, is not in the case. The fencing law referred to is section 9948, Revised Statutes 1919, which provides: ". . . any railroad corporation running or operating any railroad in this State shall erect and maintain lawful fences on the side of the road where the same passes through, along or adjoining enclosed or cultivated fields, or unenclosed lands, etc. . . . and also to construct and maintain cattle guards where fences are required, sufficient to prevent horses, cattle, mules, and other animals from getting on the railroad track. . . ." Further it is provided in said statute that until such requirements are met, such corporation shall be liable in double the amount of all damages.

In this connection, defendant urges that the statute "does not require fences where cattle guards are not required," but it will be noted the statute plainly requires "cattle guards where fences are required." Our courts have held this statute to mean that fences are required when necessary for the protection of stock where such

fences will not interfere with the use of the station grounds by the public, or render dangerous train or switching operations within the limits, and this applies to depot grounds and side tracks where such fences will not interfere with the public use or endanger the train operations. We have a parallel to the case at bar in Francis v. Bush, 226 S. W. 57, decided by the St. Louis Court of Appeals, wherein it is held that where a fence had been maintained for twenty-three years between plaintiff's land and defendant's right of way within the switch limits of a station and had been broken down and allowed to remain in such condition for three weeks before plaintiff's bull got on the track and was killed by a train, the defendant was liable under this statute, for neglect of its duty to fence.

In Dorsey v. Railroad, 175 Mo. App. 150, the court held that under a state of facts somewhat similar to the facts now before us, the question of whether a fence should have been maintained is usually one for the jury, to be considered in its two-fold aspect of convenience in the transaction of business of the railroad company and the safety of its employees. The opinion also holds that a railroad company, under such circumstances, may not arbitrarily determine whether, under the statute, it is required to enclose its right of way with a fence. See also Schoonover v. Railroad, 207 Mo. App. 489, and cases there cited.

In the case at bar, it is agreed that Campbellton Station is not an incorporated village, that there are no houses and no agent or station is maintained there. Under the rulings in the cases above cited, it obviously was within the province of the jury to determine whether or not the fence through which the bull entered the right of way should have been maintained. The court sitting as a jury decided against defendant's contention and we are not authorized to disturb that finding.

For the reasons herein stated, we hold the court did not err in refusing to make the declarations of law asked

by defendant. We have carefully examined defendant's briefs and the cases cited therein, and find nothing there in conflict with our conclusions. Judgment affirmed. All concur.