The State v. Chester Jackson, Appellant.—130 S. W. (2d) 595.

Division Two, July 7, 1939.

*Ralph E. Baird* and *Russell Mallett* for appellant.

*Roy McKittrick,* Attorney General, and *Wm. Orr Sawyers,* Assistant Attorney General, for respondent.

TIPTON, J.—In the Circuit Court of Jasper County, Missouri, the appellant was convicted of murder in the first degree and his punishment was assessed at death.

The appellant and the deceased, Daisy Esmond, both negroes, had been living together as man and wife in the city of Joplin, Missouri. On August 2, 1938, the deceased went to the home of her brother-in-law, Lester Ramson, and that night the appellant came to that place and tried to get her to go back to his home with him. On the next night, the appellant walked up to a screened door at Ramson's house, pulled it open, and shot the deceased in the back, from which wound she died. The appellant does not contend that the evidence is insufficient to sustain a first degree murder charge, therefore, we will not detail the facts leading up to the fatal shooting.

The appellant contends that the trial court committed reversible error, first, for the reason that it refused his motion for a continuance, and, second, because it refused to give an instruction on second degree murder.

"While an application for a continuance is addressed to the sound discretion of the trial court, the application and the ruling of the trial court thereon are reviewable on appeal, and our appellate courts will not permit the judgment to stand if it is apparent that the trial court exercised its discretion unsoundly or oppressively. [State v. Lewis, 9 Mo. App. 321; State v. Flick (Mo. App.), 179 S. W. 768; State v. Lambert (Mo. App.), 262 S. W. 58; State v. Lewis, 74 Mo. 222; State v. Maddox, 117 Mo. 667, 23 S. W. 771; State v. Hesterly, 182 Mo. 16, 81 S. W. 624, 103 Am. St. Rep. 634; State v. Wade, 307 Mo. 291, 270 S. W. 298; State v. Richardson et al., 329 Mo. 805, l. c. 812, 46 S. W. (2d) 576, l. c. 579.]

The motion for a continuance alleged the following: That on September 19, 1938, the appellant waived formal arraignment, at that time being represented by an attorney, T. C. Tadlock; that his trial was set for September 26, 1938; that on September 22, 1938, Tadlock, in open court, withdrew as attorney for the appellant, and on that day the court appointed Russell Mallett and Ralph Baird to defend him; that Mallett was busy in court at Lamar, Missouri, the day he was appointed, and for the next day or two in court at Jasper County; that he had no time to consult with Baird; that Baird was a young attorney in his first term of court; that Mallett had no opportunity to consult with the appellant until the day the case was tried; that the attorneys were serving without compensation; that they requested one week's continuance for the reason that it would

be impossible to properly prepare for the trial of this case without such continuance; and that there were at least a dozen witnesses endorsed on the information.

The appellant was charged with a serious crime, in fact, one for which the State was demanding the death penalty. He was entitled to a reasonable length of time to prepare his defense and he was entitled to be represented by an attorney who had a reasonable length of time to prepare to properly defend him. The two attorneys who were appointed to defend him were appointed on Thursday and were forced to trial the following Monday, giving them only four days (one of which was Sunday) in which to interview witnesses endorsed on the information, interview prospective witnesses for the appellant, and prepare instructions.

The facts in the case at bar are very similar to the facts in the case of State v. Richardson, supra. In that case, the attorney for the defendant withdrew. The trial court appointed attorneys to represent the defendants on Thursday and refused a continuance of the case which was set for the following Monday. We held the court committed reversible error in refusing to grant the requested continuance. The law securing to one (accused) the assistance of counsel didn't intend a barren right, for what avail would be the privilege of counsel if on the moment, without opportunity of studying the case, he would be forced to trial. [State v. Ferris, 16 La. Ann. 435.] We think the trial court exercised its discretion unsoundly and oppressively in overruling the appellant's motion for a continuance.

■ We are also of the opinion that the trial court erred in not giving an instruction on second degree murder. The appellant does not contend that the State's evidence was insufficient to sustain the verdict of murder in the first degree, but he does contend that under his evidence he is guilty only of murder in the second degree. If this be true, then he was entitled to an instruction on second degree murder. [State v. Wright, 337 Mo. 441, 85 S. W. (2d) 7.]

The appellant testified that on the night deceased was shot, he had no feelings of anger toward her or any person; that his mission to the Ramson house was a peaceful one; that he went there for the reason that the deceased had promised him she would let him know if she would come back and live with him; and that as he came to the screened door, he saw the deceased, and also Lester Ramson, lying on the floor. He further testified that a small dog ran across the floor and Ramson said, "If you don't get that dog out of here, I am liable to think its Chester and kill the black 'so and so,'" to which the deceased replied that she had been to see the prosecuting attorney and that now she could kill the "black son-of-a-bitch" and nothing would be done with her. On cross-examination, the appellant testified as follows: "Now then, when she said she was going

to kill you, did that infuriate you so much that you just lost all reason?" Answer, "Yes." Also, "You don't remember a thing from the time you stepped into that room, is that what you want the jury to believe?" Answer, "That is right, I absolutely didn't." Ramson, testifying as to the appellant's apparent condition at the time of the shooting, said: "Yes, he was mad." Question, "Was he trembling?" Answer, "Yes." Question, "Did he have a stare in his eyes?" Answer, "Yes." It is to be remembered that the deceased was shot almost immediately after the appellant reached the screened door.

If this testimony is true, then the appellant was guilty of only second degree murder because the element of deliberation was lacking. The fundamental distinction between murder in the first degree and murder in the second degree is that deliberation is an essential element of murder in the first degree, but when deliberation is lacking the crime is murder in the second degree at law. [State v. Liolios, 285 Mo. 1, 225 S. W. 941.] "Opprobrious epithets, insulting gestures and the like are held to constitute just provocation in this State, and, where the passion or excitement of mind is produced by such provocation to the extent that it materially interferes with the judgment and reason, an act done *at once*, under its immediate influence, cannot in law be said to be done deliberately, and the actor cannot in law be said to be in a cool state of the blood." [State v. Bulling, 105 Mo. 204, 1. c. 221, 15 S. W. 367.] We think that under the evidence in this case, it was for the jury to find, under proper instruction, whether or not the appellant killed the deceased deliberately.

From what we have said, it follows that the judgment of the trial court should be reversed and the cause remanded for a new trial. It is so ordered. All concur.