ROBERT E. KLEINSCHMIDT, Petitioner, v. DR. EMMETT F. HOCTOR, Superintendent State Hospital No. 4, Farmington, Missouri, Respondent, No. 42313—233 S. W. (2d) 649.

Court en Banc, October 25, 1950.

*Hubert E. Lay* for petitioner.

*Gordon Weir,* Assistant Attorney General, for respondent.

[650] ELLISON, J.—This is a habeas corpus proceeding brought in this court by Robert E. Kleinschmidt to obtain his release from State Hospital No. 4 at Farmington where he is detained as an insane person. He was adjudged insane by the Probate Court of Jefferson County sitting as a jury at an inquisition held on the morning of April 14, 1950, between 9 and 10 o'clock. He had been served with notice of the proceeding less than two hours earlier. The sole contention of petitioner's counsel is that this short notice was insufficient and that the adjudication was therefore void and a denial of due process.

 The first question is—under which statutes of this State was the proceeding conducted? We have two sets of statutes governing such inquisitions. Sec's 447, 449 and 451, R. S. 1939, Mo. R. S. A. cover cases where the alleged incompetent is the owner of property, and the issue is whether he is a person of unsound mind and incapable of managing his affairs. If such finding be made a guardian of his person and estate is appointed by the probate court.

On the other hand, if the alleged incompetent is a poor person without sufficient estate to support him at a state hospital for the insane, and the effort is. to have him supported at public expense, the inquisition is made under Sec's 9335 and 9336, Laws Mo. 1945, p. 908. But under Sec's 9321 and 9347 of this group of statutes any insane person may be admitted to the state hospitals as a pay patient if it be found he has sufficient estate to support and maintain him thereat.

Under either group of the foregoing statutes a verified "information" or "statement" must be filed by the petitioner, and under the second group the statement must allege that the incompetent is a

resident of the county and insane; that his insanity is of less than —— year's duration; that he has not sufficient estate to support him at a state hospital for the insane; that he (is or is not) so deranged as to endanger himself or others and (will or will not) be dangerous to the safety of the community by being at large; that he (is or is not) now being confined or restrained; and that the foregoing facts can be proved by (naming at least two persons one of whom shall be a reputable physician.)

The verified information or statement filed in this case was as follows (the caption citing Sec. 9335, supra) :

"The undersigned citizens residing in the County and State aforesaid, on their oaths, according to their best information and belief state: That Robert E. Kleinschmidt, a resident of the County and State aforesaid, is insane, that his insanity is less than a weeks duration; the said Robert E. Kleinschmidt is possessed of an estate but is incapable of managing his own affairs; that the said Robert E. Kleinschmidt is so deranged as to endanger [651] himself or others and will be dangerous to the safety of the community by being at large and that he is not now being confined or restrained; and that the foregoing facts can be proved by Dr. George Hopson, Adolph Hurtgen, Frank Dietrich and Harold Hurd.

"Theresa Kleinschmidt

"Pearl Kleinschmidt

(Seal) "Bess Hurtgen

"Dated this 13th day of April, 1949. Subscribed and sworn to before me this 13th day of April, 1949.

"John H. Reppy"

As will be seen this information did not literally comply with either Sec. 447 in the first group of statutes or Sec. 9335 in the second group. It did recite that the incompetent possessed an estate and was incapable of managing his affairs, as required by Sec. 447, supra, but did not request the appointment of a guardian as contemplated by Sec. 451. And on the other hand it omitted an. allegation that the incompetent's estate was insufficient to support him in a state hospital for the insane, as required by Sec. 9335. But otherwise it closely followed that section and alleged the incompetent was dangerous to himself and others, and that he was not then confined or restrained. We think the insanity proceeding here involved was prosecuted under the second group of statutes.

The order made by the Probate Court at said hearing on April 14, after preliminary recitals concerning the filing and contents of the information, made a finding that the incompetent had an estate sufficient to support him at the State Hospital, but upon the recommendation of J. W. Thurman, Prosecuting Attorney for Jefferson County, was to be sent there as a county patient; and then continued:

"The court doth further find that after the filing of said information due and legal notice was served upon said alleged insane person that this cause would be heard at the time as is shown by the Sheriff's return filed herein, and that said alleged insane person is represented in this Court at this time by a regular practicing attorney of the State of Missouri, J. W. Thurman.

"And now all the matters and things being submitted to the court upon the pleadings and evidence adduced, the court doth find that the facts alleged and set out in said information have been established by four good witnesses, one of whom is a respectable practicing physician, and the court doth therefore find that the said Robert E. Kleinschmidt is insane, indigent, and a proper person to be sent to Hospital No. 4, as a county patient. It is therefore ordered by the court that said Robert E. Kleinschmidt be sent to Hospital No. 4, at Farmington, Missouri, to undergo treatment thereat as a county patient, and that the clerk of this court make out and transmit to the Superintendent of said Hospital a certified copy of this order with the request that the said Robert E. Kleinschmidt be admitted to said hospital."

On the same date apparently, upon the presentation of a verified petition of Pearl E. Kleinschmidt who had been appointed guardian of the person and estate of Robert E. Kleinschmidt, the Probate Court made another order in the nature of a warrant, as required by Sec. 9339, Laws Mo. 1945, p. 910, directing the sheriff to take the incompetent into custody and deliver him to State Hospital No. 4 at Farmington for medical treatment as a *county* patient until his guardian could make the necessary arrangements to meet the expenses incidental to his confinement at said hospital as a *private* patient, said guardian then to refund to Jefferson County the money theretofore expended by the county during the incompetent's confinement as a county patient, this part of the order being made under Sec. 9347, Laws Mo. 1945, p. 912.

We make the foregoing recitals only as bearing on the question whether the two hour notice of the insanity inquisition served on the incompetent was reasonably sufficient. The proceeding is not assailed on any other ground. The contention of petitioner's counsel that the notice was insufficient is based on Sec. 449, supra, dealing with cases where the alleged incompetent is a property owner; also under [652] Sec. 9336, supra, where the incompetent is insolvent; and Sec. 912, R. S. 1939, Mo. R. S. A. in the Civil Code dealing with notices in general.

Sec. 449, supra, provides written notice of the nature, time and place of the hearing shall be served on the incompetent "a reasonable time before the *date*" thereof, and that the incompetent is entitled to be present and assisted by counsel, and if he have no attorney the Probate Court shall appoint one to represent him—which was done in this case.

Sec. 9336, supra, is exactly the same, except that it further provides if the alleged incompetent is "so deranged as to endanger himself or others or would be dangerous to the safety of the community by being at large and is not being confined or restrained, the Judge or Clerk of the Probate Court may issue a warrant authorizing the sheriff to apprehend such alleged insane person and confine him or her in some suitable place for such time as may be necessary to carry to a determination the proceedings to inquire into the condition of the said alleged insane person * * *." The verified information in this case contained these allegations, but the Probate Court did not issue a preliminary warrant authorizing the detention of the alleged incompetent pending the hearing. However it is undisputed that he was not present and came within the statutory description as respects the violent nature of his insanity.

Sec. 912, supra, in the Code of Civil Procedure provides that "Notices shall, unless a different time is prescribed by law or the practice of the court, be given at least five days before the time appointed for the hearing of the motion, pleading or other proceeding."

With respect to the mental condition of the incompetent and the course of the proceedings in the Probate Court, the testimony in this court was that the violence of his insanity increased for several days before the inquisition. He lived on a street in Hillsboro between his mother's home on the one side and his sister's on the other. He went from house to house, giving vent to outbursts of temper. The situation became so acute that the information was filed in the Probate Court about 8 o'clock on the night of April 13, and a notice of the inquisition to be held the next day was delivered to a sheriff that night for service on the incompetent. But upon request of the family service thereof was deferred until the next morning, and guards were set out to watch him during the night. Nevertheless he was up and about, ringing a neighborhood church bell twice, dragging water hose from the church into the street, and otherwise making the night hideous.

Early the next morning the notice was served on him but he refused to accept it. Officers took him to the Probate Court but detained him in another room for fear he would interrupt the proceeding. He was represented by the prosecuting attorney as counsel appointed by the court. The information was signed by members of the family, or some of them. His sister testified in the hearing before this court, and conceded he was insane at the time of the inquisition. But she asserted the insanity was only temporary, and that he has now recovered.

On the question of the unreasonableness of the two hour period intervening between the time of service of the notice of hearing and the time of the inquisition, petitioner's counsel cite three cases: State ex rel. Terry v. Holtkamp, 330 Mo. 608, 620(4), 621(5-6), 51 SW.

(2d) 13, 18 (10-12); Ex parte McLaughlin (Mo. App.) 105 SW. (2d) 1020, 1021; Ex parte Trant v. Schrader, 238 Mo. App. 105, 107-8(1), 175 SW.(2d) 161, 163(1).

In the Terry case the inquisition was held under Sec's 447 and 449, supra. The notice thereof was served on November 27 and set Dec. 4 as the date for the hearing. But the alleged incompetent waived the time specification in the notice, entered his appearance and the cause was heard and decided on November 27, the date on which the notice was served. This court en banc ruled the proceeding was void for want of legal notice of the hearing on the date it was actually [653] held, and inability of the alleged incompetent to waive such notice. In so holding the opinion referred to the provision in Sec. 449 requiring service of notice on the incompetent "a reasonable time before the date set for such hearing" and said: "Certainly a reasonable time 'before the *date*' set for the hearing would not be notice to appear on the same day the notice was served."

In the McLaughlin case, supra, the inquisition had been held under what is now Sec. 9335, supra. It was a habeas corpus proceeding brought by an inmate of State Hospital No. 2 at St. Joseph. She was confined there under an adjudication of insanity by the County Court of Jackson County in 1936, that tribunal being the proper forum for such proceedings at that time. The county clerk issued on June 2 a notice of the insanity inquisition to be held on June 8, and the sheriff served it on the incompetent on June 2. But the *judgment* of the county court on June 8 finding the incompetent to be insane, recited that the *information* was filed on June 8. And there was no record evidence to the contrary.

The Kansas City Court of Appeals held the notice served on the incompetent on June 2 was void because no supporting information or petition had been filed at that time, or until six days afterward. In this connection the court further held the insanity proceeding was in invitum, and that the county court was a court of limited jurisdiction, in consequence of which the statutes were to be strictly construed, and the facts on which the judgment was rendered must appear affirmatively on the face of the proceedings.

As will be seen there were *record* infirmities in both the Terry and the McLaughlin cases, supra. In the former the inquisition was held on November 27, the date of service of the process notice, whereas that notice designated the hearing date as December 4. There never was any notice of the inquisition on the date on which it was held. And in the McLaughlin case the process notice was served on June 2 six days before a petition for the inquisition had been filed. There was no case pending when the notice was served.

The third or Trant case cited by petitioner's counsel comes nearest to presenting sharply the issue before us now. There were no deficiencies in the record in that case and the cause was ruled on the

sole ground that an insanity inquisition held on the *same day* that notice thereof is served on the incompetent, does not afford him a "reasonable time" within the meaning of what is now Sec. 9336, supra. And there was no evidence there that the incompetent was dangerously insane.

In that case a boy had left his home in Buchanan County on the night of February 3, 1943, and started to hitchhike rides on the highways. His father caused him to be taken into custody by the St. Joseph police. On the next day the father instituted an insanity inquisition in the *county* court (the proper forum at that time). Notice thereof was served on the alleged incompetent on February 5 fixing the date of the inquisition on that same day, and it was held that day, the incompetent being absent because confined in jail. But the father employed an attorney to represent his son. The attorney visited the boy in jail and advised the court that he was insane. An adjudication of insanity followed. The Kansas City Court of Appeals held the notice to the boy was insufficient and discharged him from custody, citing the Terry and McLaughlin cases, supra.

The Court of Appeals opinion quoted from the Terry case the statement heretofore set out: "Certainly a reasonable time 'before the *date*' set for the hearing would not be notice to appear on the same day the notice was served." It will be observed this quotation italicizes the word date used in the statute. And both decisions apparently reason that "date" means *day,* in consequence of which the giving of notice must in *any and all circumstances* precede that day. But this in effect is an assertion that the notice cannot be served *on* the day of the hearing *by force of the statute,* regardless of whether such service would be reasonable in the existing circumstances, and would accord with the requirement in the same statute of *reasonableness,* which undoubtedly is its dominating objective.

[654] But the words date and day are not synonymous. In re Irvine's Estate, 114 Mont. 577, 585, 139 Pac. (2d) 489, 492, 14 A. L. R. 882, 886. The word date may, and often does, refer to the *time* of a transaction or event rather than the calendar day on which it occurs. Waggener v. McCanless, 183 Tenn. 258, 263, 191 SW. (2d) 551, 553(3), 162 A. L. R. 1402, 1405(2), citing Webster's New International Dictionary, "date". In other words, it may refer to a fraction of a day. 11 Words and Phrases (Perm. Ed.) p. 96, "date".

And this should be particularly true where, as here, the statute provides for service of notice upon the alleged insane person "a *reasonable time* before the date set for such hearing." (Italics ours.) Undoubtedly this flexible requirement was made because of the exigent circumstances in which it was designed to operate. The situation to be dealt with is far different from that arising in routine procedure, such as the filing of a motion for new trial or transcript on

appeal, both of which are required to be done "within" a fixed number of days. Sec's 116, 135, 137, Civil Code.

Similarly, by way of illustration, a person stricken physically by illness or injury would be transported forthwith to a hospital, probably by ambulance. No legal procedure need intervene. But one suddenly stricken mentally cannot be deprived of his liberty without a court proceeding. Yet there is the same need for prompt action. For that reason, we think, the statute merely requires that notice of the hearing be given a *reasonable* time before it is held. And the exigence of the situation is further recognized in Sec. 9336 by the provision that if the incompetent be dangerously insane he may be arrested and detained in some suitable place for such time as may be necessary to permit the insanity proceedings to be carried to a determination in his absence.

 Petitioner's counsel also invoke Sec. 912, R. S. 1939, Mo. R. S. A. in the Code of Civil Procedure, contending the notice of the insanity hearing in this case was void under that statute. It provides: "Notices shall, unless a different time is prescribed by law or the practice of the court, be given at least five days before the time appointed for the hearing of the motion, pleading or other proceeding." And the statute gives additional time if the party to be served resides fifty or more miles from the place where the hearing is to be had.

We hold this statute has no application to notices of insanity inquisitions in the probate court. It expressly excludes its own application where "a different time is prescribed by law or the practice of the court." And Sec. 9336 in providing for such inquisitions in the probate only requires that *reasonable* notice thereof be given. Further, it was expressly held in Corpenny v. City of Sedalia, 57 Mo. 88, 90, that the then statute now Sec. 912 had no application to changes of venue in civil cases because the statute governing these only required "reasonable" notice. That statute then was § 4, p. 1356, Wagner Stat., and now is Sec. 1062, R. S. 1939, Mo. R. S. A. See also Dowling v. Allen & Co., 88 Mo. 293, 300-1(5).

Likewise it was held in Industrial Acceptance Corp. v. Webb (Mo. App.) 287 SW. 657, 659(6) that the present Sec. 912 did not apply to a notice of an application to shorten the time for taking depositions under (now) Sec. 1930, R. S. 1939, Mo. R. S. A. since the latter statute only requires "due" notice of the application to the opposing party. It is true that the Terry case, supra, cited and quoted the present Sec. 912. But we think it is plain from the very provisions of that statute itself that it cannot be applied in an insanity inquisition proceeding governed by Sec. 9336 which makes its own special requirement of only a *reasonable* time for the giving of notice.

 This brings us back to the only fact question in the case. That is, whether the two hours' notice of the insanity hearing given to

the petitioner was reasonable *in the circumstances.* We think it was. He was attended by his family and represented by counsel. The family at that time were in favor of the proceeding. The petitioner unquestionably was violently insane. The **[655]** effort of all the parties was to have him placed in a mental institution as soon as possible. Nothing would have been gained for him, or them, by having the hearing deferred for several days. In our opinion it would do violence to the facts to hold now that the proceeding was void because the petitioner did not have sufficient notice thereof. In the circumstances he did have reasonable notice.

It appears there are now pending, or in prospect, proceedings to have the petitioner discharged from the State Hospital as one restored to sanity. That is the proper solution of the matter, if it be true he has recovered his sanity. But we cannot on this record hold that his detention in the State Hospital has been void from the beginning.

For these reasons the petitioner is remanded to the custody of Dr. Emmett F. Hoctor, Superintendent of State Hospital No. 4 at Farmington, Missouri.

*Dalton, J.,* concurs in separate opinion filed. *Conkling, J.,* concurs and concurs in concurring opinion of *Dalton, J. Hyde, C. J.,* concurs in result and in concurring opinion of *Dalton, J. Tipton, J.,* dissents in separate opinion filed. *Hollingsworth, J.,* dissents and concurs in dissenting opinion of *Tipton, J. Leedy, J.,* not sitting.

DALTON, J. (concurring).—I concur in the conclusions reached in the opinion of Ellison, J.

By this proceeding petitioner seeks to collaterally attack the judgment entered against him in the Probate Court of Jefferson County on April 14, 1950. Petitioner is now confined in the State Hospital at Farmington under a commitment issued pursuant to this judgment. The sole issue presented is the sufficiency of the notice in point of time to satisfy the provisions of Sec. 9336 R. S. 1939 and to accord petitioner due process of law.

The testimony heard in this court tended to show that the information was filed in the Probate Court on April 13, 1949 and notice of the inquisition in due form was issued and delivered to the sheriff for service upon the alleged insane person (petitioner herein). The time fixed by this notice for the hearing was 9 a. m., April 14, 1949. The return of the sheriff does not show the hour or date of service of the notice upon petitioner, but the deputy sheriff who served the notice testified that service was had on petitioner about 8 a. m., on April 14, 1949. Petitioner crumpled the notice in his hand and threw it to the floor. The evidence further shows that petitioner was noisy, profane and violent and had been creating a considerable disturbance in the neighborhood during the night preceding the service of the

notice; and that three deputy sheriffs were present on guard duty to see that petitioner did not injure himself or the members of his family and relatives. The representatives of petitioner and the witnesses on his behalf in this court concede that petitioner was in fact in an unbalanced mental condition at and before the date of the judgment which is sought to be collaterally attacked in this proceeding.

After the notice was served on petitioner, he was taken into custody and taken to the court house where the hearing was to be held. At the hearing the court appointed an attorney, who was also the prosecuting attorney of the county, to represent petitioner. The attorney appeared at the hearing and participated therein. It further appears from the evidence that this attorney was well advised as to the facts and circumstances and petitioner's condition. Conferences were had with petitioner's relatives and friends and the hearing proceeded within an hour without any request for delay.

There is no question but that the probate court, upon the filing of the information, had jurisdiction of the subject matter and the essential question presented is [656] whether or not the probate court further acquired jurisdiction of the petitioner by reason of the issuance and service of the notice. Notice and an opportunity for a hearing on the merits of the charge were given, but was the notice served "a reasonable time before the date set for such hearing" so that the court acquired jurisdiction of the person of petitioner? The judgment contains a finding "that after the filing of said information due and legal notice was served upon said alleged insane person."

Unless jurisdiction was obtained over the person of petitioner, the appointment by the court of an attorney who appeared on behalf of petitioner was of no importance. Ussery v. Haynes, 344 Mo. 530, 127 S. W. (2d) 410, 415 (where the reading of notice to the alleged insane person was held to be no legal service). In view of the admitted mental condition of petitioner at the time of the issuance and service of the notice, the length of time elapsing between the service of the notice and the time set for hearing could mean little or nothing to him. We think the notice was reasonable under the facts and circumstances existing at the time and that the court acquired jurisdiction of the person of petitioner so that an attorney to represent him was properly appointed and so that the hearing and subsequent judgment is not open to collateral attack in this proceeding.

There can be no doubt that the service of the notice was necessary to confer jurisdiction of the person, whether sane or insane. Ussery v. Haynes, supra; Hunt v. Searcy, 167 Mo. 158, 182. In the Hunt case, supra, this court said: "But one reason can be suggested for not serving the person to be tried with notice, and that is, that as he is insane, a notice to him would be useless and meaningless. This argument begs the question; for the issue to be tried is whether he is insane or not, and to fail to give him notice, for this reason, is to fore-

stall the very purpose of the inquest. But even if he be a raving maniac, he can appear by attorney or through his friends, and see that a proper person is appointed guardian or that a proper care is given to his property and to his person. In addition, what if the person was not really insane at all, and without notice was adjudged insane and confined in an asylum and the management of his property given to another? In such contingency the propriety of notice would be manifest, * * *.''

As to the necessity of notice and opportunity for a hearing also see 28 Am. Jur., Insane and Other Incompetent Persons, Sec. 14 and Sec. 32; 44 C. J. S. 165, Insane Persons, Sec. 67(e); Annotations:' ''Due Process of Law as Applied to Insane Persons,'' 43 Am. State Reports 531; ''Due Process of Law in Commitment of Insane Persons,'' 13 Ann. Cases 877; ''Necessity of Notice to Lunatic of Lunacy Inquisition,'' 10 Ann. Cases 216; ''Necessity and Sufficiency of Notice of Lunacy Proceeding to the Alleged Lunatic,'' 26 L. R. A. (N. S.) 232.

In Simon v. Craft, 182 U. S. 427, 21 S. Ct. 836, 45 L. Ed. 1165, 1170, it was held that in the commitment of insane persons, as in other cases, the essential elements of due process of law are notice to the person supposed to be insane and an opportunity to defend, though in determining whether such rights have been denied the courts should be governed by substance rather than form. In that case the court said: ''But the due process clause of the 14th Amendment does not necessitate that the proceedings in a state court should be by a particular mode, but only that there shall be a regular course of proceedings in which notice is given of the claim asserted, and an opportunity afforded to defend against it * * * If the essential requisites of full notice and an opportunity to defend were present, this court will accept the interpretation given by the state court as to the regularity, under the statute, of the practice pursued in the particular case.''

In the case of Logue v. Fenning, 29 App. Cases (D. C.), 519, 520, 525, it was held that where a party was charged with lunacy of a character so violent as to endanger the public peace, notice served upon him on the day of the hearing by the jury, but prior thereto, was sufficient to sustain the validity of the verdict and order of confirmation, [657] as against a collateral attack. In that case the notice was issued and served on March 16, 1898 and hearing had and verdict of lunacy returned on the same day. The Court said: ''The objection urged is that no sufficient notice of the inquiry as to his lunacy was given to the alleged lunatic. Conceding that due process of law requires notice to, and opportunity to be heard by, the party against whom a proceeding to inquire of his lunacy has been instituted, it is sufficient to say that the record shows that notice was served upon the party charged with lunacy of a character so violent as to endanger

the public peace. This notice, it is true, was given on the day of the hearing by the jury, but prior thereto. The alleged condition of the lunatic would seem to justify speedy action, and there is nothing in the record to show that he suffered any prejudice by reason of the shortness of the notice given. Such notice is sufficient, in our opinion, to sustain the validity of the verdict and order of confirmation, as' against this collateral attack.''

The case of State v. Jackson, 344 Mo. 1055, 130 S. W. (2d) 595, has been referred to in a dissenting opinion. That was a criminal case involving a prosecution for murder in the first degree, wherein a conviction was obtained and punishment assessed at death. In that case there was a request for delay to prepare for trial and time for preparation was clearly necessary. Here there was no such request and the facts and circumstances of the two cases are very different. This case involves a civil proceeding under which the petitioner was committed to a state institution for treatment. In this case the petitioner was surrounded by his family, he was represented by an attorney and his insane condition was established by four good witnesses, one of whom was ''a respectable practicing physician.'' That petitioner was insane at the time is now conceded, although it is contended the court had no jurisdiction to enter the judgment under which he is now confined. The judgment, however, did not bar a subsequent hearing on restoration to sanity and such proceeding is now pending.

I agree that the petitioner should be remanded to the custody of the Superintendent of State Hospital No. 4 at Farmington, Missouri.

TIPTON, J. (dissenting).—I am unable to agree with the majority opinion. The majority opinion holds that a notice served upon an alleged insane person two hours before a hearing complies with Section 9336 of the Laws of 1945, pages 908-909, which requires that ''such notice shall be signed by the Clerk under the seal of the Court and served in person on the alleged insane person *a reasonable time before the date set for such hearing.*'' (Emphasis mine.) [Section 449, R. S. Mo., 1939, is identical with Section 9336 except it says, ''signed by the judge or clerk.'']

''A reasonable time'' before such hearing would necessarily be a sufficient time for the alleged insane person to employ a lawyer, obtain evidence and have an examination by a competent physician to determine if he were insane. Any time short of that would make a farce out of the proceedings.

''The law securing to one (* * *) the assistance of counsel did not intend a barren right, for what avail would be the privilege of counsel if on the moment, without opportunity of studying the case. he would be forced to trial. State v. Ferris, 16 La. Ann. 424.'' State v. Jackson, 344 Mo. 1055, 130 S. W. 2d 595, l. c. 596.

To construe these sections any other way would violate the due process clause of our Constitution. That section reads, ''That no person shall be deprived of life, liberty or property without due process of law.'' Section 10, Article I, 1945 Constitution.

It would be impossible for an alleged insane person to secure an attorney, find witnesses and be examined by a physician in two hours. If the alleged insane person does not employ an attorney, then under Section 9338, Laws of 1945, it is the duty of the court to appoint one for him, and certainly it would take more than two hours for this attorney to investigate the [658] facts so that he would properly represent the alleged insane person. His duty to the person he represents is the same as if he had been hired by the person on trial.

The majority opinion says, ''The family at that time were in favor of the proceeding. The petitioner unquestionably was violently insane.''

The fact that the family was in favor of the proceeding is no answer to the question. Suppose a family is tired of supporting one of its aged members who is not insane. If he were served with notice only two hours before the hearing he would have no opportunity to secure evidence that would tend to prove that he was not insane and he would soon find himself in the State Hospital for the insane.

If ''the petitioner was unquestionably violently insane'' he is entitled to a proper trial to judicially determine that fact. If the alleged insane person is so violently insane as to endanger himself or others or to be dangerous to the safety of the community, then he could be safely restrained under Section 9336, supra, which provides:

''* * * if the affidavit filed in compliance with Section 9335 of this act states that the alleged insane person is so deranged as to endanger himself or others or would be dangerous to the safety of the community by being at large and is not being confined or restrained, the Judge or Clerk of the Probate Court may issue a warrant authorizing the sheriff to apprehend such alleged insane person and confine him or her in some suitable place for such time as may be necessary to carry to a determination the proceedings to inquire into the condition of the said alleged insane person and may, if in the opinion of the judge issuing the warrant it is necessary, authorize one or more assistants to be employed.''

I agree with the majority opinion that the verified information or statement was sufficient to try the issue of the petitioner's alleged insanity. I, therefore, would remand the petitioner to the sheriff of Jefferson County so that the issue of his sanity could be tried upon proper notice in the probate court of that county.