STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.* WILEY F. BLAKESLEE, DEFENDANT AND APPELLANT.

No. 9679.
Submitted July 5, 1956. Decided January 5, 1957.
Rehearing Denied February 19, 1957.
306 Pac. (2d) 1103.

48

Mr. M. K. Daniels, Deer Lodge, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Emmet T. Walsh, Asst. Atty. Gen., and Mr. Malcolm MacCalman, County Atty., Deer Lodge, for respondent.

Mr. Daniels, Mr. Walsh and Mr. MacCalman argued orally.

MR. JUSTICE DAVIS:

The appeal here is by the appellant Blakeslee (hereafter the defendant) from a judgment of conviction rendered in the district court for Powell County and from an order denying his motion for a new trial upon his plea of not guilty to an information charging statutory rape alleged to have been com-

mitted by him about September 1, 1954, on his step-daughter, an eleven year old girl. The jury's verdict found him guilty and fixed his punishment at forty-five years in the state penitentiary. Judgment on the verdict followed on March 28, 1955. His motion for a new trial was denied on April 5, 1955.

Two errors are specified as grounds for reversal. The first of these specifications is in substance that because of a change made on March 21, 1955, in the defendant's attorneys his trial should have been postponed from March 24, 1955, the date upon which that trial actually took up, to March 28, 1955, that his new counsel might adequately prepare his defense. The second error assigned turns upon the admission in evidence at the state's offer of a blood-stained undergarment (plaintiff's Exhibit No. 1) identified by the prosecuting witness as hers and said to have been worn by her after the commission of one of the acts of sexual intercourse which the state's case tended to prove.

For an adequate understanding of the first error specified by the defendant a brief history of the course of this prosecution in the district court prior to the trial which began on March 24, 1955, is necessary.

The information was filed on October 4, 1954, approximately one month after the date of the crime charged. That same day the defendant appeared in court without counsel, was arraigned, and requested time within which to plead and to secure counsel. A further extension was granted on October 11, 1954, to October 18, 1954; when he appeared yet without counsel and in his proper person entered a plea of not guilty. Again he was given until February 7, 1955, within which to secure counsel of his own choice, the court stating on January 31, 1955, that if he could not do so by that time the court would then on February 7, 1955, appoint counsel for him. Sometime before February 14, 1955, the lower court learned that Blakeslee had retained counsel. Thereafter on March 7, 1955, the case was set for trial on March 21, 1955, before a jury.

At the time set for trial on March 21, 1955, the district

judge recognized the withdrawal of the attorney previously retained by the defendant, but added that ''in spite of the withdrawal, the case at hand will proceed for trial on March 24, 1955, at 10:00 o'clock A.M., and counsel will be appointed this day to represent the said Wiley F. Blakeslee.'' M. K. Daniels, Esq., of the Powell County Bar, was accordingly appointed; and the trial was set over as the court had announced to March 24, 1955.

At that time the defendant by his court-appointed counsel who had had the case only three days asked a further postponement to March 28, 1955, and supported his motion therefor by his own affidavit, which among other things advised the court that he had been required to spend the entire day following his appointment in Dillon, Montana in connection with a suit filed in Beaverhead County, to which it is evident he was committed before March 21, 1955. This affidavit closed with counsel's assertion by way of conclusion that he required ''additional time to prepare a proper and adequate defense.'' This motion was denied. Likewise the court denied a further motion presented by counsel for a bill of particulars and overruled a demurrer to the information, both of which were filed, heard and summarily disposed of on March 24, 1955.

Here it may be conceded that the defendant himself was given more than two days to prepare for trial as R.C.M. 1947, section 94-7008, requires, and that his affidavit for a postponement of his trial to March 28, 1955, was insufficient under either R.C.M. 1947, section 94-7009, or sections 94-7010 and 94-7012, and the rule of this court announced in State v. Showen, 60 Mont. 474, 199 Pac. 917, which for more than thirty-five years has been the settled law of this jurisdiction.

However, the question presented here for this court to answer is not to be turned upon the language of these statutes or the rule of that decision, which we recognize as sound, but not in point here. The fundamental issue for us to resolve upon this appeal is whether the defendant Blakeslee was accorded the right given him by section 16, article III, of the

Montana Constitution, "to appear and defend in person and by counsel" against the serious charge brought by the state, ranking in gravity as it does second only to murder, treason and other like capital offenses. The constitutional guaranty here accorded this defendant by our fundamental law is recognized and implemented by R.C.M. 1947, section 94-4806, subdivision 1, and, where as here he desires to employ counsel but is unable to do so, by the express provision made for the assignment of counsel by the court found in R.C.M. 1947, section 94-6512.

These rights of the defendant Blakeslee, both constitutional and statutory, the trial court recognized when on March 21, 1955, the district judge below approved the withdrawal of counsel previously retained, and appointed Mr. Daniels to defend. In these circumstances it is of no moment how much time the defendant and his original attorney had had to prepare for trial. Inherent in the appointment of Mr. Daniels was the recognition by the trial judge of the defendant's need of new counsel, and as well that the appointment of a new attorney for him should be made effective to present his defense. In short here it was not enough that the court merely appoint Mr. Daniels to defend; when he did so, it was incumbent likewise upon the trial judge to give that appointment effect. To this point see Powell v. Alabama, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A.L.R. 527, and cases cited at pages 544 to 547; State v. Jackson, 344 Mo. 1055, 130 S.W. (2d) 595; State ex rel. West Virginia-Pittsburgh Coal Co. v. Eno, 135 W. V. 473, and cases cited at page 482, 63 S.E. (2d) 845, 850. Compare 16A C.J.S., Constitutional Law, section 591 (b), pages 666-669; 11 Am. Jur., Constitutional Law, section 316, page 1107.

We think these authorities pertinent as well in the construction of our own constitutional and statutory provisions, and directly to be applied to Blakeslee's appeal at bar. When so applied the record before us in our view affirmatively shows that Mr. Daniels' appointment was made purposeless by com-

pelling him to go to trial on March 24, 1955, and that in fact the defendant was denied the aid of counsel upon that trial which took up on only the third day after Mr. Daniels was appointed to defend him. Some of the facts shown by this record which persuade us that this conclusion is right are these: From the time of his arrest on or before October 4, 1954, the defendant Blakeslee had been confined in the Powell County jail because of his inability to make bail. His only near relative insofar as this record shows was his wife, whom it seems he had not seen since about January 21, 1955. Aside from the attorney first employed by him, who withdrew from his defense, it appears he had no contact while waiting in jail with anyone who was interested in his defense or in procuring witnesses for him, if he had any, unless it be one Andrew Beck, a former employer, who testified only that the defendant Blakeslee used his (Beck's) pickup truck, and that his character was generally good. In short this record affirmatively carries the conviction that the defendant had no chance to prepare a defense, and had indeed prepared none, until Mr. Daniels' appointment on March 21, 1955.

From that point on the record is moreover replete with facts which show affirmatively that Mr. Daniels was unacquainted with his case, particularly with the proof which the state had at hand and offered upon the trial and with the law applicable to the proof made; and that he needed time to familiarize himself with both. As the case is he did remarkably well in the circumstances. It is undenied that on March 22, 1955, he was required by a previous engagement to be in Dillon, Montana, in connection with a suit in Beaverhead County. Accordingly he had but one day left to get his case ready for trial. On that day he prepared and served a motion and demand for a bill of particulars, a motion for a postponement of the trial to March 28, 1955, and a demurrer to the information, but without moving first for a withdrawal of the defendant's plea of not guilty that the demurrer might be properly presented. For this oversight he is indeed to be

excused. But the prejudice here done the defendant is not to be denied; for neither his demand for a bill of particulars nor his demurrer was properly brought before the court. Accordingly both were rightly denied.

Although the state offered proof of more than one act of sexual intercourse with the prosecuting witness alleged by the state to have been committed within the period of the statute of limitations, no motion to require an election by the state was made either during the course of its case, or thereafter. When the state came to lay its foundation for the offer in evidence of its plaintiff's Exhibit No. 1 upon the testimony of Dr. Benjamin resort was had initially to what plainly is hearsay evidence; evidence which challenged as such by an objection timely made would have been rejected. When here Mr. Daniels first comprehended the nature of the state's offer his objection that no proper foundation had been laid came probably too late. Had the state however been confined by motion to elect, or otherwise, to proof of an offense committed on or about September 1, 1954, as the information charges, this exhibit would properly have been excluded as too remote, and as well counsel's further objection. This would then be true even though testimony of an act of intercourse on September 19, 1954, were received to corroborate the evidence elsewhere in the record of the crime actually relied upon by the state for a conviction. Compare People v. Smittcamp, 70 Cal. App. (2d) 741, 747, 161 Pac. (2d) 983.

Finally, the story told by the prosecuting witness and her sister, aged fourteen years, is such as to tax the credulity of the most naive. According to that story, however, their mother, the defendant's wife, was present when as is the state's evidence the defendant came home late one night in early September 1954 after the prosecutrix and her sister had gone to bed and had their mother get them up to go with him in his pickup truck to a place some three and one-half miles out of town where as is again the girls' testimony the defendant indulged in intercourse with them successively and apparently with each

in the presence of the other. If this testimony is true, and if the defendant's attorney, Mr. Daniels, had had a chance to locate the mother to verify that testimony, there would then have been little chance indeed that any trial at all would have been had. A plea of guilty undoubtedly would have followed.

On the other hand if this testimony is untrue, and it clearly is subject to the closest scrutiny, the girls' mother as the defendant's wife would have been a most powerful and persuasive witness on his behalf. If her testimony be contradictory of that of the girls, the county attorney will then have a weak case indeed on the facts. In either event Mr. Daniels was clearly entitled to a reasonable time after his appointment to locate the mother, if he could, and get her version; if he could not, at least he should have had the opportunity to satisfy himself that he could not do so. And in any case it makes no difference that upon the motion for a new trial, which he presented on April 4, 1955, he made no reference to the mother's testimony or to her as a witness who, if present, would have given testimony favorable to the defense. There is nothing in the law which vouchsafes a defendant the effective aid of counsel at his trial, but which requires then that after trial had he must justify by showing what evidence he could have procured had he had time to do so. The rule which gives him the right to counsel also means that counsel shall be given a reasonable time to prepare before trial. Whether counsel has had that time is not to be determined by what he does or does not do days, weeks, or months after trial.

In summary: This defendant may be as guilty as ever felon ▉ not hanged. He is nevertheless entitled to a trial consistent with our Constitution and Codes. Such a trial he has not had. Specifically, he is guaranteed counsel by appointment of the court, if he cannot himself employ an attorney. If then the court recognizes this right as was the case here, it is equally the duty of the court to make to appointment of counsel effective, i.e., to give court-appointed counsel a reasonable time for the preparation of his case after he has been

appointed. Within the rule of the authorities cited we think this record is conclusive that Mr. Daniels did not have a reasonable time to get his case together, and that accordingly the trial court denied this defendant his right to effective representation by counsel in his defense at his trial. There must therefore be a new trial for this manifest error.

The defendant's second specification of error that the blood-stained undergarments (plaintiff's Exhibit No. 1), which were identified by the complaining witness as hers, should not have been received in evidence on the record now before us cannot be sustained. But upon another trial after the state elects upon which of the alleged acts of intercourse it will stand for a conviction and upon another objection timely made, this exhibit may well be inadmissible, and then properly should be excluded.

The ruling here we must leave to the sound judgment of the trial court as the case may develop upon a new trial. On this record we cannot foresee what that record will be nor the ruling then to be made.

The judgment of conviction and the order denying a new trial from which the defendant has appealed are reversed. The case is remanded for a new trial consistent with the views herein expressed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANDERSON and BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

I think the judgment should be affirmed. It should be noted here that if defendant and his counsel did not have sufficient time to adequately prepare for trial some showing should have been made on motion for new trial that defendant's rights were prejudiced thereby. I concede that the time to prepare for trial was short but unless defendant was prejudiced thereby the verdict and judgment should stand. Defendant had ample time to prepare his motion for a new trial and doubtless had

he asked for it, would have been allowed additional time to file affidavits.

The motion for new trial does not assert as one of the grounds that defendant has new evidence which he could not with reasonable diligence have produced at the trial.

Had defendant produced affidavits from witnesses tending to show that he had a defense which he was unable to produce at the trial because of the shortness of time allowed to prepare for trial, I would be among the first to favor the granting of a new trial. But this court is not concerned with abstract rights that do not affect the result. In other words, adverse rulings must be shown to have been prejudicial before defendant can complain.

In Young v. Commonwealth, 263 Ky. 683, 93 S.W. (2d) 10, 12, the court, in speaking of a like contention, said:

"* * * and there is not a fact appearing anywhere in the record remotely indicating that defendant was prejudiced because of the matters therein complained of. Not the slightest suggestion is anywhere made that any witness or any kind or character of evidence could have been produced by a postponement of the trial to a later date, and the only time or place wherein this ground is mentioned is in brief of counsel on this appeal."

What was said in Carson v. State, 137 Tex. C. R. 188, 128 S.W. (2d) 1182, 1183, fits this case. The court there said:

"He [defendant] does not even claim that he had any defense or any witnesses by whom he could establish the same.

"Consequently, the giving of further time to interrogate witnesses when he had none, and to prepare a defense which he did not have, would not have been of any avail to him." To the same general effect is Jones v. State, 205 Ark. 806, 171 S.W. (2d) 298.

In this state the principle of law is embodied in our statute, R.C.M. 1947, section 94-8207, which reads: "After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect

the substantial rights of the parties.'' And this court has announced the rule to be that '' 'errors not substantially prejudicing accused are not available as grounds for reversal'.'' State v. Allison, 122 Mont. 120, 199 Pac. (2d) 279, 293.

I think the court properly denied the motion for new trial and that the judgment should stand.

## On Motion for Rehearing

PER CURIAM.

At the time of the oral argument and submission of this appeal, and at the time the decision of the court determining the appeal was rendered, this court consisted of Mr. Chief Justice Hugh Adair and Associate Justice Horace S. Davis, R. V. Bottomly, Forrest H. Anderson and Albert H. Angstman, all of whom heard the oral arguments on the appeal and thereafter participated in the consideration of the case.

The decision of the court reversing the judgment of conviction and the trial court's order denying a new trial was rendered and pronounced on January 5, 1957. The opinion of the court was written by Mr. Justice Davis and the disposition of the case therein made was concurred in by Chief Justice Adair and Justices Bottomly and Anderson while Mr. Justice Angstman dissented.

On January 7, 1957, Justice Anderson qualified for and assumed the office of Attorney General of the State, to which office he had been duly elected at the general election held November 6, 1956, and the Honorable Wesley Castles, on appointment of the Governor, qualified for and now fills the vacancy on this court so occasioned. Also on January 7, 1957, Justice Davis completed the term of his appointment and retired from the court, being succeeded by Justice Adair, who then and there qualified for and assumed the office of Associate Justice, to which he had been duly elected at the general election so held November 6, 1956. Thereafter, and on said January 7, 1957, the Honorable James T. Harrison, on appoint-

ment of the Governor, qualified for and assumed the office of Chief Justice on this court.

Thereafter, on January 15, 1957, the state served and filed a motion for a rehearing herein. Since Chief Justice Harrison and Mr. Justice Castles were not members of this court at the time of its consideration or determination by this court, neither took any part in the consideration or determination of the State's motion for a rehearing herein.

On the question being put, *Shall the motion for rehearing be granted?* the members of this court so serving thereon at the time of the argument, submission and determination of this case on its merits decided as follows: *In the affirmative*: Justice Angstman and *In the negative*: Justices Adair and Bottomly, wherefore respondent's motion for rehearing herein failed and the justices voting in the negative being of the opinion that the motion for a rehearing does not present any proposition or question which was not fully considered by the court in rendering its decision, and nothing being presented to change the opinion of any member of this court who participated in this court's decision heretofore rendered upon the question decided, the state's motion for rehearing is denied, remittitur to issue forthwith. Gas Products Co. v. Rankin, 63 Mont. 372, 395-398, 207 Pac. 993, 999, 1000, 24 A.L.R. 294; State v. Morran, Mont., 306 Pac. (2d) 679.