No. 01-631

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 211

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

JASON NEFTALI GARCIA,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Eighth Judicial District,
                  In and for the County of Cascade, Cause No. ADC 97-286,
                  The Honorable Marc G. Buyske, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Kristina Guest, Appellate Defender Office, Helena, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; Mark W. Mattioli,
          Assistant Attorney General, Helena, Montana

          Brant Light, Susan Weber, Cascade County Attorneys, Great Falls, Montana


                    Submitted on Briefs: February 27, 2003

                         Decided: August 12, 2003

Filed:

                         Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    In 1998, a jury found the Appellant, Jason Garcia, guilty of sexual intercourse without consent. We reversed the conviction and remanded for a new trial due to an unconstitutional juror summoning process. On remand, approximately eighteen days prior to trial, Garcia moved the Eighth Judicial District Court, Cascade County, to continue the trial as his prospective private counsel needed more time to prepare for trial. The District Court denied Garcia's motion and a jury subsequently convicted him of sexual intercourse without consent. We reverse and remand for a new trial.

¶2    Garcia raises three issues on appeal. However, the dispositive issue is whether the District Court abused its discretion when it denied Garcia's motion to continue.

BACKGROUND

¶3    On August 14, 1997, the State charged Garcia, by information, with one count of aggravated burglary, a felony, in violation of § 45-6-204(2)(b), MCA (1995), and one count of sexual intercourse without consent, a felony, in violation of § 45-5-503(3)(a), MCA (1995). The State alleged that at approximately 5:00 a.m. on July 26, 1997, Garcia broke into the victim's apartment and forced the victim to have sexual intercourse with him. Garcia pled not guilty to both offenses. Garcia acknowledged that he had intercourse with the victim but maintained that the encounter was consensual.

¶4    On January 30, 1998, a jury found Garcia not guilty of aggravated burglary and guilty of sexual intercourse without consent. Garcia appealed his conviction to this Court arguing that the District Court should have stricken the entire jury panel because the juror

2

summoning process did not comply with § 3-15-505, MCA (1997). The State conceded that Garcia was entitled to a new trial pursuant to *State v. LaMere*, 2000 MT 45, 298 Mont. 358, 2 P.3d 204, a case decided after Garcia's conviction. Therefore, on July 25, 2000, we reversed the sexual intercourse without consent conviction and remanded the matter to the District Court for a new trial.

¶5 On September 28, 2000, Garcia appeared with his court-appointed counsel for arraignment and pled not guilty to the charge of sexual intercourse without consent. The District Court scheduled the second trial for January 29, 2001. In December 2000, Garcia contacted private counsel, Steve Hudspeth, about representing him at trial. Hudspeth agreed to represent Garcia for $3000 subject to two conditions: (1) Garcia had to obtain a continuance so Hudspeth could adequately prepare for trial and (2) Hudspeth would not represent Garcia on appeal. Hudspeth informed Garcia that he would not perform any work on the case until Garcia transmitted the money to him. Due to the holidays, over which Hudspeth left town on vacation, and Garcia's incarceration, Garcia did not transmit the $3000 to Hudspeth until January 11, 2001. That same day, Garcia filed a motion to continue the trial. The motion simply stated that "Defendant's counsel needs more time to prepare for trial." The motion made no mention of substituting counsel.

¶6 On January 12, 2001, with the State's consent, Hudspeth informed the court that Garcia acquired the necessary funds to retain private counsel. Hudspeth acknowledged his willingness to represent Garcia at trial subject to the two conditions. The State objected to Garcia's motion to continue but stated that "should private counsel be retained and make a

3

motion to continue, the State would reconsider their position depending on the circumstances at that time." On January 16, 2001, during a telephone conference on the motion, Garcia agreed to waive his right to speedy trial should the court grant his motion. Nevertheless, the District Court denied Garcia's motion to continue.

¶7 On January 19, 2001, Garcia filed a Renewed Motion to Continue Jury Trial. Therein, Garcia stated that he wished to replace his court-appointed counsel with private counsel. However, ten days would not suffice for Garcia's private counsel to prepare for trial. Garcia insisted that a denial of his motion to continue "would result in a denial of Defendant's right to counsel and would deny the Defendant Due Process." On January 22, 2001, following a hearing on the motion, the District Court denied Garcia's renewed motion to continue for the following reasons: retention of trial counsel two weeks prior to trial is not a sufficient reason to grant a continuance; Garcia's court-appointed counsel was competent to represent Garcia at trial; should the court grant the motion, Garcia would remain in jail for a lengthy period of time given his inability to post bail; and given the court's congested docket, the court could not schedule a new trial for several months.

¶8 The case proceeded to trial on January 29, 2001. On February 1, 2001, the jury found Garcia guilty of sexual intercourse without consent. The District Court sentenced Garcia to one hundred years in the Montana State Prison for the offense and conditioned parole eligibility on the completion of Phase I and II of the prison's sexual offender program. Garcia filed a Notice of Appeal from the conviction on June 4, 2001.

¶9 On appeal, aside from the continuance issue, Garcia cites two additional assignments

4

of error. Garcia argues that the District Court erred when it (1) denied his challenge for cause regarding prospective juror Waldenberg and (2) permitted the State to read Dr. Bibby's former testimony into evidence over Garcia's objection. Based on our resolution of the continuance issue, we need not belabor the facts surrounding Garcia's additional assignments of error.

## STANDARD OF REVIEW

¶10 A ruling on a motion to continue is subject to the district court's discretion. *State v. Borchert* (1997), 281 Mont. 320, 324, 934 P.2d 170, 173. We review discretionary district court rulings to determine whether the court abused its discretion. *Borchert*, 281 Mont. at 324, 934 P.2d at 173.

## DISCUSSION

¶11 Did the District Court abuse its discretion when it denied Garcia's motion to continue?

¶12 The Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee the fundamental right to assistance of counsel. *State v. Craig* (1995), 274 Mont. 140, 148, 906 P.2d 683, 688. This right to counsel contemplates the right to the "effective assistance" of counsel. *Craig*, 274 Mont. at 148, 906 P.2d at 688. In turn, the right to the effective assistance of counsel encompasses the right to retain counsel of one's own choosing. *See Chandler v. Fretag* (1954), 348 U.S. 3, 9-10, 75 S.Ct. 1, 5, 99 L.Ed. 4 ("Regardless of whether petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel was unqualified. . . . [A] defendant

5

must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth.").

¶13 Within the context of appointed counsel, a defendant may not insist upon appointment of specific counsel or demand dismissal or substitution of counsel so long as appointed counsel renders effective assistance. *Craig*, 274 Mont. at 148-49, 906 P.2d at 688. However, this prohibition does not similarly apply to pecunious defendants. For those individuals with the means to secure private representation, the right to retain counsel of one's own choosing derives from the notion that "chosen representation is the preferred representation. Defendant's confidence in his lawyer is vital to his defense. His right to decide for himself who best can conduct the case must be respected wherever feasible." *Maxwell v. Superior Court of Los Angeles Cty.* (Cal. 1982), 639 P.2d 248, 253. Finally, "[t]he rule which gives [a defendant] the right to counsel also means that counsel shall be given a reasonable time to prepare before trial." *State v. Blakeslee* (1957), 131 Mont. 47, 54, 306 P.2d 1103, 1106. Failure to respect these rights constitutes a denial of due process. *Chandler*, 348 U.S. at 10, 75 S.Ct. at 5.

¶14 With these principles as a backdrop, § 46-13-202, MCA, governs a court's consideration of a motion to continue as follows:

> **Motion for continuance.** (1) The defendant or the prosecutor may move for a continuance. If the motion is made more than 30 days after arraignment or at any time after trial has begun, the court may require that it be supported by affidavit.
>
> (2) The court may upon the motion of either party or upon the court's own motion order a continuance if the interests of justice so require.

6

(3) All motions for continuance are addressed to the discretion of the trial court and must be considered in the light of the diligence shown on the part of the movant. This section must be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the prosecution to a speedy trial.

Therefore, pursuant to § 46-13-202, MCA, a district court must consider a motion for continuance in a criminal trial in light of the diligence shown by the moving party and may grant the continuance, in its discretion, if the interests of justice so require. *State v. Fields*, 2002 MT 84, ¶ 20, 309 Mont. 300, ¶ 20, 46 P.3d 612, ¶ 20.

¶15 As indicated above, the District Court denied Garcia's motion based on the timeliness of the request, competence of his court-appointed counsel, speedy trial concerns, and docket considerations. We will analyze the timeliness issue pursuant to the diligence standard in § 46-13-202, MCA. We will examine the other considerations within the "interests of justice" framework.

Diligence

¶16 The District Court did not engage in a lengthy analysis of Garcia's diligence in obtaining retained counsel and a continuance. In a written order, dated January 16, 2001, the court stated, "While Defendant is entitled to retain counsel of his choice, the retention of counsel two weeks before the scheduled trial date is not a sufficient reason to grant a continuance of the trial date." After entertaining argument at the hearing on January 22, 2001, the court stated, "I am going to deny the request, deny the renewed motion. I am doing it . . . for the same reasons that this Court set forth in its order of January [16] . . . ." The

7

court then seemingly contradicted its written order in stating:

> As to the issues of Mr. Garcia's diligence in seeking new counsel and in seeking a motion to continue, only hindsight tells us it would have been better when the issue of new counsel first came up, someone would notify the Court. But I believe that is not a relevant consideration given the lack of evidence of any problem with the current counsel.

Nevertheless, we must review Garcia's diligence as prescribed in § 46-13-202, MCA.

¶17 In *People v. Courts* (Cal. 1985), 693 P.2d 778, the California Supreme Court addressed a continuance issue in a case virtually identical to the one at bar, both factually and legally. In *Courts*, California charged the defendant with murder and the use of a firearm. The defendant pled not guilty, the trial court appointed counsel for the defendant, and the court scheduled the case for trial on October 26, 1982. In September 1982, the defendant contacted a local attorney to retain his services for trial. However, the defendant needed time to raise sufficient funds for the retainer.

¶18 On October 18, 1982, the defendant sought a continuance in order to hire private counsel. However, the defendant had not secured the representation to that point based on some unfinished financial arrangements. The court denied the request. On October 21, 1982, the defendant conveyed the requisite funds to the private attorney and the attorney agreed to take the case if the defendant obtained a continuance. The defendant attempted unsuccessfully to calendar the motion for continuance before trial.

¶19 On the day of trial, the defendant's public defender renewed the motion for continuance. The private attorney appeared and testified as to his willingness to represent the defendant. However, the private attorney conditioned the representation on a

8

continuance in order to prepare for trial. The trial court denied the defendant's motion and a jury subsequently convicted him of involuntary manslaughter.

¶20   On appeal, the California Supreme Court reversed. *Courts*, 693 P.2d at 785. In so doing, it undertook an analysis similar to that required by § 46-13-202, MCA. As for the diligence component to the inquiry, the court concluded:

> The record establishes that appellant engaged in a good faith, diligent effort to obtain the substitution of counsel *before* the scheduled trial date. Nearly two months before trial, appellant contacted [private counsel] and discussed representation and the fee. During the weeks that followed, appellant attempted to raise the necessary funds. He conscientiously informed the court of his efforts as early as October 18th and made a motion for continuance on that date.
>
> Moreover, as [private counsel's] testimony revealed, a lawyer-client relationship had been established–certainly by October 21st, if not before. Thus, by the time of the October 26th motion, the court was not confronted with the "uncertainties and contingencies" of an accused who simply wanted a continuance to *obtain* private counsel. . . .
>
> Furthermore, appellant cannot be faulted for lack of diligence in failing to conclude arrangements with [private counsel] while [private counsel] was on vacation. As *Crovedi* teaches, the "reasonable efforts" required of the courts to ensure that a financially able individual be represented by counsel of his choice assume greater importance where the accused is not responsible for the absence of retained counsel.
>
> . . . .
>
> The continuance request made on October 18th was only the second request by appellant for a continuance. (The first was a request for discovery which was denied.) Contrast this set of facts with those found in . . . *Reaves*. There, the accused "previously and successfully obtained numerous continuances without indicating that there existed any reason to change attorneys."
>
> The October 18th motion represented a timely assertion of appellant's

intentions. That motion was made more than a week before trial–at a time when it appeared that a retainer arrangement was imminent. Even if the motion were premature on the ground that no retainer had actually been paid, the court's reasoning that it was "last minute" and "too late" to substitute counsel was not a correct reading of the law. [Citations omitted.]

*Courts*, 693 P.2d at 781-82.

¶21 As in *Courts*, we conclude that Garcia made a good faith, diligent effort to obtain substitution of counsel before the scheduled trial date. Garcia was not arraigned on remand until the end of September 2000. By December 2000, nearly two months before trial, Garcia contacted Hudspeth. In the ensuing weeks, Garcia attempted to secure Hudspeth's representation. However, Garcia's incarceration and Hudspeth's vacation delayed the arrangement.

¶22 On January 12, 2001, seventeen days prior to trial, Hudspeth informed the court of his willingness to represent Garcia, subject to the two conditions. Thus, as in *Courts*, the District Court was not confronted with the "uncertainties and contingencies" of a dubious request for continuance. Further, Garcia's January 11, 2001, motion to continue was his first such request, a fact which rebuts any suggestion of dilatory intent.

¶23 As indicated above, the California Supreme Court approved of the foregoing conduct which culminated in a first motion to continue eight days prior to trial and a second motion on the day of trial. Garcia undertook actions virtually identical to those of the defendant in *Courts*. Yet, Garcia filed his first motion to continue eighteen days prior to trial and his second motion ten days prior to trial. We find the rationale offered and result reached in *Courts* compelling and, on that basis, hold that Garcia exercised sufficient diligence in

10

acquiring independent representation and seeking a continuance.

Interests of Justice

A.  Competent Representation

¶24    At the hearing on Garcia's motion, the District Court inquired about court-appointed counsel's fitness for trial.  It appears the court examined the competence of court-appointed counsel issue based on *Craig*:

> [B]earing in mind the analysis that *State v. Craig* indicates the Court must follow, I find no basis to conclude that Mr. Garcia is not receiving effective counsel, competent counsel from the Public Defender's Office.
>
> Mr. Jensen from the Public Defender's Office has informed the Court today he is ready to go to trial, that while Mr. Hudspeth is a trial attorney and Mr. Garcia might feel more comfortable with Mr. Hudspeth representing him, the Court has nothing in front of it to indicate that Mr. Jensen is not capable of providing competent counsel.
>
> Therefore, I don't believe that Mr. Garcia's Sixth Amendment right under the United States Constitution, nor his right under the Montana Constitution, is compromised by denying the request for a continuance.
>
> [W]ithout a fact basis to conclude that current counsel is somehow not competent to try this case at this point in time, is not providing effective assistance of counsel, I don't believe there's a sound basis for this Court to grant the continuance.

¶25    In *Craig*, the state charged the defendant with robbery, the defendant pled not guilty, and the court appointed counsel from the public defender's office to represent the defendant. Shortly thereafter, the defendant moved to substitute his court-appointed counsel, not with privately retained counsel but with another court-appointed counsel.  The court denied the defendant's motion.

11

¶26 On appeal, we affirmed and stated the following:

> If appointed counsel renders effective assistance, the defendant may not demand his appointed counsel's dismissal or substitution, nor may the defendant demand that certain counsel be appointed. In other words, the right to assistance of counsel does not grant defendants the right to counsel of their choice.

*Craig*, 274 Mont. at 148-49, 906 P.2d at 688. It is important to note the context in which we stated the above, i.e., the discharge of court-appointed counsel in favor of substitute court-appointed counsel. Neither the Sixth Amendment, nor Article II, Section 24 of the Montana Constitution confer such a right upon criminal defendants absent a showing of ineffective assistance of counsel. *See Caplin & Drysdale, Chartered v. United States* (1989), 491 U.S. 617, 624, 109 S.Ct. 2646, 2652, 105 L.Ed.2d 528 ("The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").

¶27 The case at bar presents an entirely different situation than that contemplated in *Craig*. Here, Garcia sought to substitute court-appointed counsel with a privately retained attorney. As such, questions of competency or effective assistance of his court-appointed counsel proved irrelevant and the District Court should not have considered this issue in ruling on the motion. *See Courts*, 693 P.2d at 785 n.11 ("When the state erroneously infringes an accused's right to appear and defend with retained counsel, considerations as to whether the accused was competently represented by an advocate of the *court's* own choosing become irrelevant."); *Foster v. Florida* (Fla. Dist. Ct. App. 1997), 704 So.2d 169,

12

172 ("[A]ppellant was not seeking different *court-appointed* counsel–he sought only to be represented by the attorney *retained privately* by his family on his behalf. Thus, it was not relevant to determine whether appellant would be entitled to other *court-appointed* counsel.").

## B. Speedy Trial Concerns

¶28 Admittedly, we are uncertain whether the speedy trial concerns would have independently moved the court to deny the continuance. Nonetheless, as indicated by the following, the record suggests that the issue was one factor which contributed to the court's determination:

> Mr. Garcia has been . . . incarcerated since 1997 with respect to this charge, and the Court is very concerned about . . . [that], even if he were to waive speedy trial. I think that's a concern that is clear from reading the decisions of the Montana Supreme Court regarding speedy trial and possible prejudice. In other words, this Court must consider the fact that the Defendant has been incarcerated and will continue to be incarcerated up to any trial date.
>
> . . . .
>
> While Mr. Garcia may be willing to waive speedy trial, what that means is he is going to be sitting in jail until this Court can find a trial date. . . . I am . . . acutely aware of the concerns that have been expressed by the Montana Supreme Court with regard to speedy trial issues where a defendant is sitting in jail.

¶29 Both the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee criminal defendants the right to a speedy trial. The right to a speedy trial was primarily designed to protect defendants from oppressive tactics by the prosecution. *State v. Gould* (1995), 273 Mont. 207, 216, 902 P.2d 532, 538. Thus,

case law demonstrates that it is the defendant's prerogative to assert or waive the prescribed right. *See, e.g., State v. Weeks* (1995), 270 Mont. 63, 72, 891 P.2d 477, 483; *State v. Fife* (1981), 193 Mont. 486, 490, 632 P.2d 712, 715.

¶30　We commend the District Court on its concern for Garcia's welfare. However, Garcia, on more than one occasion, agreed to waive his right to a speedy trial to secure private counsel. Implicit in this waiver was the voluntary assumption of the consequences. Further, neither party calls into question the validity of the proposed relinquishment. As such, the waiver's implications should not have factored into the District Court's deliberations on Garcia's motion to continue.

### C. Docket Considerations

¶31　Much like the speedy trial concerns, the District Court referenced its congested docket in denying Garcia's motion to continue. In its January 2001, order, the District Court stated:

> If a continuance were granted, given the docket of the undersigned District Judge, sitting by substitution in this matter, a new trial date would not be likely until October or November, 2001. . . .
>
> As the trial date approached, and based upon assurances received from counsel at a bail reduction hearing on November 9, 2000, that the matter would proceed to trial on January 29, 2001, the undersigned District Judge vacated and rescheduled other matters pending for trial on January 29, 2001.

At the January 22, 2001, hearing, the court reiterated the above concerns:

> [W]hile I would make every effort to try to locate a date . . . earlier than October . . . I am still not comfortable that's going to be . . . any sooner than 120 days, 180 days down the road, given the calendaring that I have to do . . . to give priority to those cases over which I have jurisdiction. And that's just a fact of life. That's a fact that is inherent in our current system in Montana that allows for substitution of judges, the risk that any party runs when they

14

ask for a new judge–it is going to delay the process.

¶32 When presented with the same issue, the Sixth Circuit Court of Appeals offered the following:

> [A] trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected. On the other hand, the right to counsel of choice may not be used to unreasonably delay trial.
>
> When a defendant's chosen counsel represents that he cannot meet a set trial date and requests a continuance, a trial court considering such a request must be sensitive to the defendant's right to counsel of his choice, as well as the public's interest in prompt and efficient administration of justice. If the court finds that the delay is an attempt to manipulate a trial, or causes prejudice to the prosecution, or creates difficulties for the trial court, the trial court may interfere with the defendant's right to counsel of his own choice and require the case to proceed. On the other hand, where the request is reasonable, where there have been no prior adjournments, where the length of delay is moderate, and where the adjournment seems to be for legitimate reasons, the court should allow a reasonable adjournment to permit a defendant to have retained counsel of his own choice.
>
> This does not mean that a trial court cannot tightly control its own docket, or that its assignment of cases can be manipulated by defense counsel and defendants. A court must always keep control of its own docket, but in doing so it must be reasonable and consider the constitutional right of a defendant to have retained counsel of his choice.

*Linton v. Perini* (6th Cir. 1981), 656 F.2d 207, 209.

¶33 Similarly, the Florida District Court of Appeal concluded:

> While the Sixth Amendment affords criminal defendants a "presumption in favor of counsel of choice," . . . "where 'considerations of judicial administration' supervene, the presumption in favor of counsel of choice is rebutted and the right must give way . . . ." Our supreme court has agreed that "a defendant does not have an absolute right to a particular lawyer and that it is within a trial court's discretion to deny a defendant's request for particular counsel when there is a 'countervailing public interest in the fair and orderly

15

administration of justice.'" [Citations omitted.]

*Foster*, 704 So.2d at 173.

¶34     We certainly appreciate the import of efficient docket management and the day to day toil which accompanies the task.  Yet, here, nothing in the record suggests that Garcia's right to chosen counsel should have yielded to the "administration of justice."  Garcia did not seek any continuances prior to January 2001 and nothing in the record indicates that a dilatory motive precipitated the request.  In short, the record is simply devoid of any evidence indicating an intent to subvert the judicial proceedings.

¶35     Further, the record fails to show that a continuance would have significantly inconvenienced the court.  As for prejudice to the State, the State indicated that it had "an excruciating trial calendar between last week and the end of March" and "getting this trial out of the way would certainly be preferable for the State."  Nevertheless, after questioning by the court, the State conceded that a later trial date would not jeopardize the attendance of its witnesses.  A review of the record simply does not persuade us that the "administration of justice" warranted denial of a justifiable request for continuance.

¶36     On appeal we typically afford trial courts greater latitude on discretionary matters.  However, discretionary rulings which purport to deprive litigants of constitutional protections demand close scrutiny.  The United States Supreme Court poignantly summarized an appellate court's charge in reviewing matters such as this:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend

16

without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. [Citations omitted.]

*Ungar v. Sarafite* (1964), 376 U.S. 575, 589, 84 S.Ct. 841, 849-50, 11 L.Ed.2d 921. We presume that such an indefinite standard often plagues discretionary contemplations. Nevertheless, courts should be mindful that "close questions" regarding motions to continue should be resolved in favor of the defendant to ensure a fair trial. *Borchert*, 281 Mont. at 326, 934 P.2d at 174 (citing *State v. Fife* (1980), 187 Mont. 65, 71, 608 P.2d 1069, 1072-73).

¶37    "The right to choose one's own counsel is an essential component of the Sixth Amendment." *Linton*, 656 F.2d at 209. Despite the Sixth Amendment's extensive protections, we have held that the right to counsel afforded by Article II, Section 24 of the Montana Constitution is broader than the rights afforded by the United States Constitution. *State v. Spang*, 2002 MT 120, ¶ 22, 310 Mont. 52, ¶ 22, 48 P.3d 727, ¶ 22. In light of the constitutional protections and foregoing analysis, we conclude that the above considerations do not suffice, independently or collectively, to deprive Garcia of his constitutional rights guaranteed by the Sixth Amendment and Article II, Section 24 of the Montana Constitution. Accordingly, we hold that the District Court abused its discretion when it denied Garcia's motion to continue.

¶38    Finally, the denial of a motion for a continuance cannot be reversed absent a showing of resultant prejudice to the defendant. *State v. Lundblade* (1984), 213 Mont. 420, 424, 691

17

P.2d 831, 833. We believe that a deprivation of this magnitude compels reversal despite the legitimacy of the subsequent proceedings. "[W]ere a defendant not provided the opportunity to select his own counsel at his own expense, substantial risk would arise that the basic trust between counsel and client, which is a cornerstone of the adversary system, would be undercut." *Linton*, 656 F.2d at 209. Similarly, contrary to popular sentiment:

> We would reject reality if we were to suggest that lawyers are a homogenous group. Attorneys are not fungible, as are eggs, apples and oranges. Attorneys may differ as to their trial strategy, their oratory style, or the importance they give to particular legal issues. These differences, all within the range of effective and competent advocacy, may be important in the development of a defense. It is generally the defendant's right to make a choice from the available counsel in the development of his defense. Given this reality, a defendant's decision to select a particular attorney becomes critical to the type of defense he will make . . . .

*United States v. Laura* (3rd Cir. 1979), 607 F.2d 52, 56.

¶39 Grounded in part on precepts similar to those above, the California Supreme Court offered the following:

> [T]o assess "why or how an accused's trial was disadvantaged by injecting an undesired attorney into the proceedings would require an impossibly speculative comparison" of appointed counsel's representation with chosen counsel's unrealized performance. "No appellate court can or should engage in that kind of analysis when such fundamental rights hang in the balance." [Citations omitted.]

*Courts*, 693 P.2d at 785. Several courts agree with California that the denial of the right to private representation is prejudicial per se. *See Foster*, 704 So.2d at 174. We concur with the above authorities that the error contemplated herein is structural. To surmise a non-participating entity's impact on a foregone proceeding is to countenance conjecture.

18

Such hypothetical deliberations should not enter the equation with the fundamental right to counsel at stake.

¶40     In its closing comments at the January 22, 2001, hearing, the State reassured the court that the court would make the right decision. The court responded, "I know I will make the right decision. I am not sure the seven folks in Helena would." Despite the court's notions to the contrary, the sentiments reflected in this Opinion transcend Helena, Montana. As the foregoing analysis demonstrates, a significant weight of Sixth Amendment authority supports Garcia's position. This, in conjunction with Montana's right to counsel case law and presumption in favor of the defendant in "close calls" regarding continuances, we simply cannot discount. Accordingly, we reverse the decision of the District Court and remand this matter for a new trial.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE