No. 05-015

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 147

STATE OF MONTANA,

  Plaintiff and Respondent,

v.

KELLY DEAN WORTHAN,

  Defendant and Appellant.

APPEAL FROM:    The District Court of the Twenty-First Judicial District,
                In and For the County of Ravalli, Cause No. DC 03-104,
                Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        David E. Stenerson, Stenerson Law Office, P.C., Hamilton, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Pamela P. Collins,
        Assistant Attorney General, Helena, Montana

        George H. Corn, County Attorney; William E. Fulbright, Deputy County
        Attorney, Hamilton, Montana

                        Submitted on Briefs:  October 26, 2005

                        Decided:  July 5, 2006

Filed:

_____
                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Kelly Worthan (Worthan) appeals the judgment of conviction for two counts of sexual intercourse without consent, two counts of incest, and one count of tampering with a witness or informant entered in the Twenty-First Judicial District Court, Ravalli County. We affirm.

¶2    We address the following issues on appeal:

¶3    Did the defendant's trial counsel render ineffective assistance of counsel, depriving him of a fair trial?

¶4    Did the District Court abuse its discretion when it denied counsel's motions to withdraw and to appoint new counsel?

BACKGROUND

¶5    Worthan was charged by amended information filed February 10, 2004, with two counts of sexual intercourse without consent, two counts of incest, and one count of tampering with a witness or informant.

¶6    On March 22, 2004, Worthan's appointed counsel, Kelli Sather (Sather), made a motion to withdraw from her representation of Worthan and to appoint new counsel. Sather had previously represented Worthan in a related civil matter, and it was her understanding that Worthan was planning to appeal the court's decision therein, making a claim of "ineffective assistance of counsel" relating to her representation. Accordingly, Sather argued that by remaining Worthan's counsel she would be in violation of Rule 1.7(b), M.R.Prof.Cond., relating to conflicts of interest between lawyers and clients.

2

¶7 The District Court held a hearing on the motion on April 1, 2004. The District Court pointed out that ineffective assistance was a criminal standard, not a civil standard,[1] and that the Rules of Professional Conduct had changed, negating Sather's argument under Rule 1.7(b). Sather nevertheless maintained that Worthan's potential claim against her, whether ineffective assistance or malpractice, created a conflict in her representation of him in the criminal case. Sather also asserted that Worthan had sought advice from other attorneys and that she and Worthan had difficulty communicating. In addition, Worthan told the District Court that he found it difficult to contact Sather and that she did not keep him adequately informed of the progress of the case. The District Court concluded that Worthan's complaints were "simple office management concerns" and that Sather's representation was competent, despite her misgivings:

> I'm only interested in, if I appoint an attorney, ensuring that attorney stays on the case unless I'm hearing there's been a complete breakdown in communication.
>
> And I have to hear more than the magic words complete breakdown in communication. I have to see substantively that the work is not getting done, and in this file the work is getting done.

The motion was denied.

¶8 During a hearing on May 26, 2004, to consider various motions by the State, the foster mother to Worthan's daughters testified that Sather had improperly questioned one

---

[1]This statement of the law was not entirely correct. In *In re A.S.*, 2004 MT 62, 320 Mont. 268, 87 P.3d 408 (decided March 16, 2004), we acknowledged that in cases involving the termination of parental rights parents have a right to effective assistance of counsel. Though the label is the same, the standards for effective assistance of counsel differ between criminal cases and termination of parental rights cases.

of the children during an examination by the defense's expert witness. Sather briefly broached the issue of withdrawing as counsel at a hearing on May 27, 2004, but she did not pursue a definitive ruling from the District Court. On June 7, 2004, Sather filed a second motion to withdraw and for appointment of new counsel. Sather denied the foster mother's allegation, but she asserted in her motion that she was now a necessary witness at trial and could not continue to represent Worthan without violating Rule 3.7(a), M.R.Prof.Cond., prohibiting lawyers from advocating at trials in which they are likely to be necessary witnesses unless certain exceptions apply. In its opinion and order dated June 9, 2004, the District Court determined that Sather's assertions that she was a necessary witness at trial and that her withdrawal would work no substantial hardship against Worthan—whose trial was scheduled for June 14, 2004—were unsubstantiated. The District Court stated that it was unable to evaluate whether there was merit to Sather's speculation that she would be a necessary witness at trial, and it noted that Sather failed to address why she delayed filing the motion until a mere five days before trial. The District Court also stated that this may be a situation where the general prohibition on an attorney for the defendant testifying at trial is outweighed by the potential detriment to the client should the attorney be replaced so close to trial. Ultimately, the District Court denied the motion but said it would consider appointing co-counsel, if Worthan were to request it. Worthan did not file a motion to appoint co-counsel, nor did he request a continuance of the trial. No evidence was admitted at trial

regarding the incident other than the child's testimony that she could not remember whether Sather had questioned her during the examination.

¶9    Prior to trial, the District Court denied a motion by the State requesting that evidence of other crimes, wrongs, or acts be admissible.  During cross-examination at trial, however, Sather had the following exchange with Shelly Verwolf, a community social worker supervisor with the Department of Public Health and Human Services, Child and Family Services Division:

> Q.  [by Ms. Sather]   Okay.   You stated you received the central intake report out of Helena on April 25th, 2003; correct?
>
> A.  [by Ms. Verwolf] Uh-huh.
>
> Q.  So, were there any other reports made before April 25?
>
> A.  Yes, there was.  We had received a report in March of 2003 alleging that Kelly Worthan—
>
> Q.  Okay.  I just wanted to know if there was another report.

After an in-chambers conference and ruling, the State was able to ask this follow-up question:

> Q.  [by Mr. Fulbright, counsel for the State]   Was that earlier report to central intake in March of 2003 an allegation that the defendant was involved in a separate or unrelated matter of sexual abuse?
>
> A.  [by Ms. Verwolf]  Yes, it was.

¶10    On the afternoon of the second day of trial, Sather cross-examined Dr. Ruggiero, the children's therapist.  Sather had scheduled Dr. Vernon Whitley to testify that day concerning his physical examinations of the children because he would be unavailable

5

later. However, Sather chose to continue her cross-examination rather than call Dr. Whitley to the stand. As a result, Dr. Whitley did not testify, but his reports were admitted into evidence by stipulation.

¶11 During the defense case-in-chief, Sather called David Stube (Stube) as an expert witness to criticize the therapy of the children and to testify about the children's suggestibility. However, during voir dire, doubt was raised about Stube's credentials and qualifications. Specifically, the State questioned whether Stube's doctoral degree from Columbia Pacific University was valid in light of a court order finding that the school was operating illegally prior to its issuance of a degree to Stube. Also, Stube admitted to misrepresenting to a mental health center where he had been employed that he had a master's degree. Stube later reimbursed the mental health center for refunds it made to clients who were improperly billed as a result of his misrepresentation. Additionally, though Stube is a licensed clinical counselor, the State argued that he was not qualified to criticize the work of the licensed psychologists who had testified for the State. Ultimately, the District Court disqualified Stube as a witness.

¶12 The jury returned a verdict of guilty on all counts, and Worthan was sentenced to a total of 130 years imprisonment with sixty years suspended. Worthan appeals.

STANDARD OF REVIEW

¶13 To prevail on a claim of ineffective assistance of counsel, a defendant must show that his "counsel's performance fell below an objective standard of reasonableness" and he must demonstrate prejudice, *i.e.*, "the existence of a reasonable probability that the

6

result of the proceeding would have been different absent counsel's unprofessional errors." *State v. Harris*, 2001 MT 231, ¶¶ 18-19, 306 Mont. 525, ¶¶ 18-19, 36 P.3d 372, ¶¶ 18-19 (citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674).

¶14    In addition,

> The trial record must adequately document a challenged act or omission of defense counsel for a defendant to raise an ineffective assistance claim on appeal.  In addition to documenting the error, the record available to this Court on appeal must afford sufficient understanding of the reasons for counsel's act or omission to answer the threshold question of whether the alleged error expresses a trial strategy or tactical decision.  If the record does not supply the reason for counsel's act or omission, the claim must be raised by petition for post-conviction relief.

*Harris*, ¶ 21 (citations omitted).

¶15    "It is within the sound discretion of the district court to rule on requests for substitution of appointed counsel, and absent an abuse of discretion, we will not overrule such a ruling." *State v. Gallagher*, 2001 MT 39, ¶ 4, 304 Mont. 215, ¶ 4, 19 P.3d 817, ¶ 4.  "In evaluating discretionary rulings, this Court considers whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Gallagher*, ¶ 4 (quotation marks omitted).

## DISCUSSION

¶16    **Did the defendant's trial counsel render ineffective assistance of counsel, depriving him of a fair trial?**

¶17 Worthan asserts several grounds for concluding that Sather provided ineffective assistance of counsel. Worthan argues that Sather's failure to call Dr. Whitley to the stand, her failure to discover the deficiencies in Stube's qualifications as an expert, her elicitation of Verwolf's testimony regarding another report of sexual abuse, and her failure to investigate a list of potential witnesses that Worthan had provided her constitute, individually and collectively, ineffective assistance.[2]

¶18 The State argues that Sather's failure to discover Stube's questionable qualifications was not objectively unreasonable because Stube had testified in court approximately fifty times in the previous twenty-one years, had held himself out as a "Ph.D.," and, in the words of the District Court at a post-trial hearing, was "facile and artful in holding out his qualifications to be more than they actually were." However, "[o]nly when the record will fully explain why counsel took, or failed to take, action in providing a defense for the accused may this Court review the matter on direct appeal." *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, ¶ 20, 30 P.3d 340, ¶ 20. Here, there is no record of Sather's decision-making process relating to offering Stube as an expert witness. Accordingly, we conclude that the record is insufficient to evaluate Sather's

---

[2]In support of his argument, Worthan has submitted in the appendix to his brief Exhibits B and D containing information not in the District Court record. The State has moved to strike the exhibits based on Rule 9(a), M.R.App.P., which provides that the "original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court shall constitute the record on appeal in all cases." The motion is well taken, and we do not consider Exhibits B and D.

8

reasonableness in calling Stube as a witness, and the matter is therefore more appropriate for consideration in a petition for postconviction relief.

¶19 Likewise, the "record is insufficient to determine whether counsel's performance fell below an objectively reasonable standard," *State v. Grixti*, 2005 MT 296, ¶ 27, 329 Mont. 330, ¶ 27, 124 P.3d 177, ¶ 27, regarding Sather's decision not to call Dr. Whitley to the stand and Sather's alleged failure to investigate witnesses. Worthan cites to no portion of the record that indicates why Sather did not call Dr. Whitley to the stand or whether (or why) she failed to investigate Worthan's list of potential witnesses. Therefore, we again conclude that the matter is more appropriate for consideration in a petition for postconviction relief. *See White*, ¶ 20.

¶20 The State also contends that Sather effectively mitigated the possible harm that her "opening of the door" to evidence of prior reports of sexual abuse may have had. In a conference out of the jury's presence, after argument by the parties, the District Court ruled that the State should not be able to explore the content of the previous report of sexual abuse any further than to ask whether it involved a separate or unrelated matter. During the same conference, Sather gave her tactical reason for eliciting the testimony from Verwolf: "I wanted to get in that Melissa Worthan [the defendant's wife] had gone in and made a report on the 24th before this report even came in on the 25th."

¶21 "Counsel's trial tactics and strategic decisions cannot be the basis upon which to find ineffective assistance of counsel." *Grixti*, ¶ 25. It is clear from the record that the testimony Sather educed from Verwolf was the result of a considered tactical decision.

9

Accordingly, we conclude that Sather did not render ineffective assistance by drawing out this testimony.

¶22 **Did the District Court abuse its discretion when it denied counsel's motions to withdraw and to appoint new counsel?**

¶23 "A defendant's right to assistance of counsel at public expense extends through an original appeal of right, but the accused does not have the right to counsel of his or her choice." *State v. Zackuse* (1991), 250 Mont. 385, 385, 833 P.2d 142, 142. "If the trial court determines that the defendant and his counsel have a conflict so great that it results in a total lack of communication or if counsel is failing to render effective assistance, new counsel should be appointed." *Zackuse*, 250 Mont. at 385, 833 P.2d at 142.

¶24 Worthan argues that the District Court allowed concerns of judicial administration to outweigh "the necessity of trust between client and attorney." Worthan contends that the denial of the motions to withdraw were "comparable to a denial of a motion to continue trial" because "disruption of the Court's schedule seemed paramount in the Court's decisions to deny trial counsel's requests to withdraw." Relying on *State v. Garcia*, 2003 MT 211, 317 Mont. 73, 75 P.3d 313 (reversing the trial court's denial of defendant's motion to continue trial so the defendant's newly retained private counsel that replaced appointed counsel ten days prior to trial would have time to prepare), Worthan argues that the expeditious administration of justice is not cause to deny the motions of counsel to withdraw. Worthan asserts, "There is simply no other reason the Court denied the motion of trial counsel to withdraw than to appease the desire to keep

10

the Court's calendar in order." Consequently, Worthan argues that the District Court abused its discretion by denying the motions.

¶25 In *Garcia*, our reversal of the trial court's ruling was predicated upon the principles that a defendant has the right to decide who best can conduct the case and that this "right to counsel also means that counsel shall be given a reasonable time to prepare before trial." *Garcia*, ¶ 13 (quoting *State v. Blakeslee* (1957), 131 Mont. 47, 54, 306 P.2d 1103, 1106). "Failure to respect these rights constitutes a denial of due process." *Garcia*, ¶ 13. However, *Garcia* drew a distinction between "those individuals with the means to secure private representation," *Garcia*, ¶ 13, and defendants who have counsel appointed: "Within the context of appointed counsel, a defendant may not insist upon appointment of specific counsel or demand dismissal or substitution of counsel so long as appointed counsel renders effective assistance." *Garcia*, ¶ 13.

¶26 Despite his statement to the District Court that he had difficulty communicating with Sather, Worthan has failed to demonstrate that there was a "total lack of communication," *Zackuse*, 250 Mont. at 385, 833 P.2d at 142, with his trial counsel at the time the motions were made. At the hearing on the first motion to withdraw, the District Court specifically noted that Sather was "performing an adequate job here and . . . surpassing the minimum professional standards for representation of Mr. Worthan," and that "the motions that Ms. Sather has filed have been well-briefed." In addition, Worthan, speaking directly with the judge, asserted that Sather had not subpoenaed the witnesses he had requested in the civil case in which she had represented him, that it was

11

difficult to confer with Sather due to frequent cancellations of appointments, and that he had belatedly received copies of the motions filed in the criminal case. The District Court interpreted these complaints as "part of the constant stresses and strains of a busy lawyer running a busy law office," and we are not persuaded by Worthan that the District Court's assessment of Sather's representation was incorrect.

¶27 The second motion to withdraw, rather than addressing client-attorney communication, focused on the possible conflict between Worthan and Sather that could have occurred had Sather been called to testify. However, as the District Court discussed in its ruling, Sather was unable to substantiate that she was likely to be a necessary witness at trial, and she was unable to demonstrate that her disqualification at such a late date would not work substantial hardship on her client. *See* Rule 3.7, M.R.Prof.Cond. Moreover, the District Court suggested that Worthan could request the appointment of co-counsel as means of alleviating the uncertainties surrounding the potential for Sather to become a witness at trial. As it happened, Worthan suffered no prejudice from the ruling because Sather did not testify at trial. Given the circumstances, we cannot conclude that the District Court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. Further, we deem unpersuasive Worthan's argument that Sather's second motion to withdraw was equivalent to a motion to continue, and we do not construe it as such. Therefore, we conclude that the District Court did not abuse its discretion by denying counsel's motions to withdraw.

12

CONCLUSION

¶28    Worthan's arguments regarding the effectiveness of his counsel's assistance in relation to the decisions whether to call Dr. Whitley and Stube as witnesses and whether to investigate his list of potential witnesses are best addressed in a petition for postconviction relief and not on direct appeal. With respect to the evidence elicited by Sather of a previous report of sexual abuse, we conclude that counsel did not provide ineffective assistance.

¶29    The District Court did not abuse its discretion by denying counsel's motions to withdraw and to appoint new counsel.

¶30    Affirmed.


/S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

13