ORIGINAL

FILED
08/17/2021
Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA
Case Number: DA 19-0323

DA 19-0323

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 208N

STATE OF MONTANA,

    Plaintiff and Appellee,

v.

DUSTIN HAYES KNOX,

    Defendant and Appellant.



APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC-18-249
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Chad Wright, Appellate Defender, Gregory Hood, Assistant Appellate Defender, Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Damon Martin, Assistant Attorney General, Helena, Montana

        Steven Eschenbacher, Lake County Attorney, Benjamin R. Anciaux, Deputy County Attorney, Polson, Montana

Submitted on Briefs:  June 16, 2021

Decided:  August 17, 2021

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Dustin Hayes Knox appeals from the Twentieth Judicial District Court's denial of his motion to continue his jury trial and his subsequent convictions of assault with a weapon, aggravated assault, aggravated burglary, and solicitation or tampering with witnesses and informants. We affirm.

¶3 On July 10, 2018, the State charged Dustin Hayes Knox (Knox) with robbery, assault with a weapon, aggravated assault, and aggravated burglary. The State alleged that Knox had poured gasoline from a water bottle onto Angela Cox (Cox) while she was sleeping and, upon her awakening, demanded money, threatening to light her on fire before going on to threaten her husband with a hammer. On November 14, 2018, the State filed an amended information charging Knox with solicitation of tampering with witnesses and informants based on a letter he had allegedly written to another inmate attempting to coordinate efforts to intimidate Cox from testifying at trial. The added count caused a conflict of interest for appointed counsel, and the public defender's office substituted in contract conflict counsel, Lisa Kauffman (Kauffman). At the arraignment for the amended charges, Kauffman moved for the December 17, 2018 trial to be vacated. The District

Court granted the motion, rescheduling the trial for February 4, 2019. On January 22, 2019, Kauffman filed a motion to continue, pointing to a previously-scheduled trial which she had expected would be resolved with a guilty plea, but which was now going to trial scheduled for February 2, 2019, and a double-homicide trial scheduled for March and April 2019.

¶4 At a January 30, 2019 hearing on the motion, Kauffman explained that, though she had "done a lot of leg work on this case," she needed more time to prepare, as she had inherited Knox's case with no investigatory work having been completed. Kauffman stated that she needed to investigate information with which to impeach Cox over alleged misrepresentations regarding whether Cox had owed Knox money and to look into potential witness testimony suggesting that Cox, rather than Knox, had wielded the gasoline. Kauffman, who admitted she was "freaking out" under the stress, stated that "things need to be done. I've talked to probably every witness I'm going to need on the phone. I need to probably interview the complaining witness based on her testimony from last August."

¶5 Kauffman stated that, as soon as she got the case in November, she had told Knox:

> "I'm leaving for six weeks, the end of December to January, for vacation."
> That was planned, two years in the making. And I said, "it's possible I'm
> not going to be together enough to get this ready by February. Do you
> understand that with my trial commitment we may not go until June?"

¶6 Knox apparently assented. Kauffman had not advised the court of her schedule at that time, however, and conceded at the hearing: "I guess perhaps I should have advised the court of [scheduled plans] as soon as I got the case." The court noted that Kauffman

3

took the case knowing she was going to leave for six weeks, to which Kauffman responded: "It never occurred to me that a case I was appointed on in November I would be expected to try in the first week of February." The court acknowledged that a jury panel had already been pulled and that a flight for an out-of-state State witness had been arranged.

¶7 In response to a proposed June trial date, the District Court stated that it was unwilling to have Knox be "incarcerated eleven months because of his counsel." Kauffman then suggested a trial date of April 29, 2021. However, Knox foreclosed further discussion of that possibility, indicating that he would only be willing to go to trial either "June or [next] Monday."

¶8 The State did not object to the proposed continuance, citing concern for a potential ineffective assistance of counsel claim on appeal. The District Court acknowledged this concern, stating "[i]f we go forward on Monday, [Knox] would have a pretty good argument to ineffective assistance of counsel." Kauffman repeatedly responded to the District Court's stated concerns regarding Knox's speedy trial rights by pointing out that they were Knox's to waive. Nevertheless, the District Court stated that Knox had "not filed a waiver of speedy trial" and that: "As I understand, it's the defendant's position that it's either June or Monday, so let's go to trial on Monday."

¶9 At trial, the State presented witness testimony regarding the event as well as crime scene photographs, lab reports indicating that the recovered water bottle and Knox's clothing tested positive for gasoline, and a hammer found in Knox's vehicle. The responding officer testified to finding Cox with wet hair, bloodshot eyes, and "reek[ing] of gasoline." He described a very strong smell of gasoline in her room and finding a small

4

water bottle smelling of gasoline next to the bed. Over objection, the State admitted the intercepted letter stating:

> Please Make Sure That Bitch Don't Show up For trial!!! Counting on You All. K. I Wasn't Able To talk to Bandito Robin So Don't Know What he got Accomplished! He Said he talked to her So We Should Know if that was enough on November 14th. If it Wasn't Tell Joe to Round Some Boys up & get his ass up here. OR just tell him I Could Sure Use his help & Would Gladly Pay For Services K.

¶10 Kauffman brought two witnesses. One witness, the mother of Knox's child, testified that Cox had indeed owed Knox money and suggested that the letter exhorting "Joe" to "round some boys up" was merely seeking financial help for her and her son. Both witnesses testified that Cox did not have a reputation for truthfulness in the community. In closing, Kauffman attacked Cox's credibility, arguing that Cox lied in representing that she did not personally know her assailant at the time of the incident. Kauffman also pointed to the lack of fingerprint evidence on the water bottle, which was not admitted into evidence, and implied that Cox—whose hands were not swabbed for gasoline—might have actually been the aggressor. In closing, the State characterized the issue of bond money as a red herring, noting that "the fact that someone owes you money doesn't give you the right to collect it by pouring gas on somebody and threatening them with a hammer." The jury apparently agreed; at the close of the three-day trial, it returned a verdict of guilty for assault with a weapon, aggravated assault, aggravated burglary, and solicitation of tampering with a witness. The jury acquitted Knox on the robbery charge.

¶11 On February 11, 2019, Kauffman filed a motion for a *Gallagher* hearing to "determine if the defendant could show by a preponderance of the evidence whether he

5

received a fair trial based upon ineffective assistance of counsel." *See State v. Gallagher*, 2001 MT 39, ¶ 7, 304 Mont. 215, 19 P.3d 817. The court heard testimony from both of Knox's attorneys, finding that, after conducting Knox's suggested interviews, they had informed Knox that "appropriate defenses and trial strategies would not produce favorable results." The District Court concluded that Knox had "failed to show errors so serious that assistance was not effective[,] . . . failed to show that those errors prejudiced the defense and deprived him of a fair trial," and "failed to point to evidence or tactic that would have overcome the overwhelming evidence offered to the jury."

¶12 Knox appeals the court's denial of his motion to continue. Rulings on motions to continue are reviewed for an abuse of discretion. *State v. Garcia*, 2003 MT 211, ¶ 10, 317 Mont. 73, 75 P.3d 313.

¶13 Due process considerations and the right to counsel require that counsel be given a reasonable time to prepare for trial. *Garcia*, ¶ 13. Section 46-13-202(3), MCA, provides:

> All motions for continuance are addressed to the discretion of the trial court and must be considered in the light of the diligence shown on the part of the movant. This section must be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the prosecution to a speedy trial.

¶14 Though a district court has discretion over motions to continue, "[w]hen a continuance is requested, and that request is reasonable given all the relevant factors including the defendant's right to a fair trial and effective assistance of counsel, it constitutes abuse of discretion for the court to refuse to grant the continuance." *State v. Sotelo*, 209 Mont. 86, 92, 679 P.2d 779, 782 (1984). However, even when a district court has abused its discretion in refusing a motion to continue, this Court will not overturn the

6

decision absent a showing that the ruling prejudiced the defendant. *See State v. Ibarra-Salas*, 2007 MT 173, ¶ 13, 338 Mont. 191, 164 P.3d 898.

¶15    Here, we need not consider whether the District Court abused its discretion in declining to continue the trial, as Knox has not shown that he was prejudiced as a result. Knox points to no blunders by Kauffman at trial.  Instead, Knox simply asserts that Kauffman *may* not have completed a sufficient level of investigatory research before trial, raising the *possibility* that Kauffman could have missed something.  However, Knox points to no evidence to support this contention.  To the contrary, the record indicates that Kauffman was prepared at trial and that the strength of the State's case, not performance by defense counsel, was responsible for the ultimate outcome.

¶16    First, the record indicates that, by the time of trial, Kauffman had completed the work she had expressed concern about during the hearing on the motion to continue.  At the hearing, Kauffman had stated that, despite having already done "a lot of legwork" on the case, "things need[ed] to be done."  More specifically, she said that she "need[ed] to probably interview the complaining witness."  However, she also said that she had already "talked to probably every witness I'm going to need on the phone."  She also stated that she was investigating potential evidence regarding who was wielding gasoline and whether Cox had misrepresented that she did not in fact owe Knox money.

¶17    At trial, Kauffman did introduce evidence arguing that Cox had actually owed Knox the disputed money leading to the altercation and brought two defense witnesses to challenge Cox's credibility.  In closing, Kauffman attacked the State's version of events by implying that Cox, rather than Knox, might have been the aggressor.  Given the

7

corroborating officer testimony that Cox had been found drenched with gasoline, Kauffman's failure to support this implication with evidence is far more attributable to its likely non-existence than to a lack of preparedness by counsel in attempting to locate it. In short, there is no indication in the record that any of the "things [that] need[ed] to be done" at the time of the hearing—interviewing witnesses and looking into ways to impeach Cox or challenge her account of events—remained uncompleted at the time of the trial.

¶18 At the *Gallagher* hearing following trial, Kauffman testified to working between fourteen and eighteen hours per day in order to be prepared for Knox's trial. Nothing about this trial—featuring less than two days of witness testimony and a straightforward case by the State—suggests that defense counsel would need an inordinate amount of time with which to prepare. Notwithstanding Kauffman's stated sense of "freaking out" due to an approaching deadline while loose ends still needed to be tied up—an all too familiar feeling to many who have experienced law school—the record indicates that Kauffman was sufficiently prepared by the time of trial, where she provided Knox with adequate representation.

¶19 Second, the outcome of the trial appears far more attributable to the substantial strength of the State's case than the performance of counsel. The State presented witness testimony, physical evidence, officer testimony of finding Cox with wet hair, bloodshot eyes, and "reek[ing] of gasoline," and an intercepted letter seeking to "Round Some Boys up" to "Make Sure" that Cox "Don't Show up For trial." At the hearing on the motion to continue, Kauffman admitted that she did not have a "magic wand" with which to respond

8

to the letter. Knox points to nothing that Kauffman could have done differently that would have led to a different result in this case.

¶20     In light of the strength of the State's case and a lack of any indication that Kauffman was unprepared on the day of the trial, we do not find that Knox was prejudiced by the District Court's denial of his motion to continue the trial. Because Knox is not entitled to a reversal without a showing of prejudice, we need not consider whether the District Court abused its discretion.

¶21     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶22     Affirmed.

_____
Chief Justice

We Concur:

_____

_____

_____

_____
Justices

9